UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(Palm Beach Division)

Case No. 9:19-CV-80633-ROSENBERG

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

NATURAL DIAMONDS INVESTMENT CO.,
et al.,

    Defendants,

H.S. MANAGEMENT GROUP LLC, et al.,

    Relief Defendants.
_____/

### RECEIVER'S UNOPPOSED THIRD INTERIM APPLICATION FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES TO THE RECEIVER AND HIS PROFESSIONALS; INCORPORATED MEMORANDUM OF LAW

Pursuant to paragraph 52 of Section XIII of the Order Granting Plaintiff Securities and Exchange Commission's Motion for Appointment of Receiver [DE 20] (the "Appointment Order"), Jeffrey C. Schneider, not individually, but solely in his capacity as the Court-appointed receiver (the "Receiver"),[1] submits his unopposed Third Interim Application for allowance and payment of compensation and reimbursement of expenses for the quarterly period October 1, 2019 through December 31, 2019.

---

[1] This Court appointed Mr. Schneider as receiver for Argyle Coin, LLC ("Argyle"). On March 28, 2019, approximately two months before the Receiver's appointment, the Honorable Donald Middlebrooks appointed Mr. Schneider as Corporate Monitor for Defendants Natural Diamonds Investment Co. ("NDIC") and Eagle Financial Diamond Group, Inc. ("EFDG") in *Rounds v. Natural Diamonds Investment Co., et al.*, Case No. 18-cv-81151 (the "Corporate Monitor Action"). This Court then expanded the Receivership to include NDIC and EFDG [DE 94, 104] and the Receiver filed a motion to close the Corporate Monitor Action.

The Receiver has conferred with the Securities and Exchange Commission (the "SEC"), the Defendants, and the Relief Defendants regarding this Fee Application. <u>The SEC states that it has no objection to this Fee Application</u>. Counsel for the Seigels and Relief Defendant H.S. Management Group LLC ("HS Management") states that they have no objection. Counsel for Relief Defendant Gold 7 of Miami, LLC ("G7") states that it has no objection. Defendant Jose Aman states that he has no objection.[2]

## PROCEDURAL BACKGROUND

On May 13, 2019, the SEC filed an emergency action in this Court to enjoin NDIC, EFDG (a/k/a Diamante Atelier), and Argyle (collectively, the "Corporate Defendants"), and their owners, Jose Aman, Harold Seigel and Jonathan Seigel. In the Complaint [DE 1], the SEC asserted various claims against the Corporate Defendants, Aman, and the Seigels. Essentially, the SEC alleged that the Corporate Defendants were a three-tiered Ponzi scheme that promised hundreds of investors large investment returns that ranged from 24% to 100% every year to two years for signing investment contracts supposedly backed by diamonds worth tens of millions of dollars. As a result, the Corporate Defendants raised approximately $30 million from approximately 300 investors in Canada and the United States from late 2013 through 2018.

The SEC also filed a Motion for Temporary Restraining Order, Asset Freeze, and Other Relief [DE 4] and a Motion for Appointment of Receiver [DE 7]. The SEC advised this Court that Mr. Schneider had been appointed as Corporate Monitor for NDIC and EFDG in the Corporate Monitor Action, which was then also pending in the Southern District of Florida.

---

[2] The remaining Relief Defendants have already settled with the SEC and have not responded.

As a result of the SEC's efforts, this Court appointed the Receiver for Argyle. This means that this Court ordered the Receiver to, among many other things, assume full control of Argyle and to secure, conserve, hold, manage, and prevent the loss of its assets.

There are currently asset freezes over Defendants Aman, Harold Seigel and Seigel entity HS Management (a relief defendant) [DE 40]. In addition, there are currently asset freezes over the other relief defendants, including approximately $1.6 million frozen in accounts in the names of Relief Defendants Winners Church International Inc. of West Palm Beach Florida ("Winners Church") and Fredrick and Whitney Shipman (collectively, the "Shipmans") [DE 59], and dozens of diamonds and jewelry pieces held by Relief Defendant G7 [DE 55]. As discussed below, the SEC recently settled its claims against Winners Church and the Shipmans, so the approximately $1.6 that was frozen has been deposited into the Court's registry and will, upon Court-approval, be transferred to the Receiver to distribute, again upon Court-approval, to the victims.

Since his appointment, the Receiver and his professionals have been working tirelessly, yet efficiently, to effectuate his obligations under the Appointment Order. As further discussed below, this work has primarily involved identifying accounts and assets of Argyle, as well as preserving all relevant books and records regarding Argyle (both hard copy and electronically-stored information ("ESI")).

The Receiver has been appointed to serve as receiver in numerous cases involving the SEC, the Federal Trade Commission ("FTC"), the Commodity Futures Trading Commission, and various Attorneys General during his nearly 30-year career. The Receiver has also served as counsel, or special counsel, to various receivers in SEC and FTC cases. The Receiver has helped to recover approximately $300 million for defrauded investors during the course of his career. He considers it an honor and a privilege to serve in this capacity, and intends to carry out his duties at the highest level possible for the benefit of the defrauded investors.

Throughout this process, the Receiver and his professionals have worked cooperatively with the SEC and other agencies, with each side mindful of their respective responsibilities and duties. The coordination of the Receiver's and the SEC's efforts has resulted in several immediate accomplishments (further discussed below) for the benefit of the Receivership Estate and, most importantly, victimized investors.

## INTRODUCTION

The Receiver and his professionals have been involved in numerous state and federal receiverships, either as receiver or receivership counsel. Like most receiverships, this Third Fee Application is still front-loaded, as much of the Receiver's and his professionals' services occurred during the early phases of the Receivership (which is the time-period covered by this Fee Application). In other words, the leg-work that the Receiver and his professionals have performed in this period, and will continue to perform for the next several months, will be a large portion of the anticipated asset recovery work in the Receivership.

As more fully discussed in the Receiver's three Reports [DE 111-1, DE 144-1 and DE 185-1, respectively], the Receiver has accomplished much for the benefit of the Receivership Estate and investors since his appointment. Such accomplishments include the following:

i.  Testifying at the May 23, 2019 show cause hearing regarding Winners Church and the Shipmans, and providing a declaration to the SEC regarding the dozens of diamonds and jewelry pieces held by G7, which ultimately resulted in asset freezes over those Relief Defendants' assets in the amount of approximately $2 million [DE 5-12, DE 55, DE 59]. During the subject quarter, the SEC settled its claims against Winners Church and the Shipmans transferred to the Court's registry approximately $1.6 million which will, upon Court-approval, be transferred to the Receiver to distribute, again upon Court-approval, to the victims;

ii. During the subject quarter, moving, which the Court granted, for authority to sell Aman's fiancée's diamond ring and the 104 pouches of uncut, unpolished colored diamonds that the Receiver obtained from Aman [DE 168, 179]. The Receiver is currently in the process of

4

        marketing, selling, and monetizing those items for the victims' benefit. All sales proceeds will be placed in the Argyle receivership account for their benefit. The Receiver's appraiser has appraised the items, but the Receiver cannot disclose the appraised values because doing such could impact any offers or bids he ultimately receives;

iii. Demanding, negotiating, and ultimately obtaining possession of 38 pieces of jewelry and diamonds from non-party Carmelo De Stefano pursuant to an Agreed Order [DE 73]. The Receiver met with Mr. De Stefano and his counsel on September 27, 2019 and October 23, 2019, to discuss relevant matters and to ultimately attempt to obtain his consent to an agreed turnover of all of the subject jewelry/diamonds for the benefit of the Receivership Estate. During the appliable period, Mr. De Stefano and the Receiver came to an agreement in principle regarding a settlement of the jewelry/diamonds. His counsel and the Receiver are currently finalizing the settlement papers, and the Receiver anticipates filing a motion to approve the settlement agreement shortly. The bottom line is that Mr. De Stefano will be relinquishing any interest he may claim to the diamonds/jewelry, after which the Receiver intends to file a motion to sell the subject diamonds/jewelry for the benefit of the victims. The Receiver's appraiser has also appraised the diamonds/jewelry. The Receiver's appraiser's appraised value for the items is more than **$500,000**;

iv. Inspecting for purposes of appraising the diamonds/jewelry held by G7 for purposes of the upcoming mediation on March 3, 2020, and if there is an impasse, for purposes of the G7 trial on the critical "value" issue;

v. Expanding the Receivership to include NDIC and EFDG and consolidating those entities from the Corporate Monitor Action to further streamline this proceeding for the benefit of all the victims [DE 94, 104];

vi. Seizing four jumping horses, and then relocating them, maintaining them, and eventually selling them, for a total of **$175,500.00**, the funds of which the Receiver has received and deposited in the EFDG/NDIC receivership account (the account that funded the horses' care, maintenance, and appraisals for marketing/selling)[3];

vii. Communicating by email and telephone with investors regarding the status of this proceeding and creating a receivership website naturaldiamondsreceivership.com for more efficient updates to and

---

[3] The motions to approve the horse purchase agreements were filed, and granted [DE 105, 106, 135, 138, and 141] in this case, given the expansion of the Receivership to include NDIC and EFDG.

5

        communications with investors and the public. The receivership website also contains important court filings, letters from the Receiver to the investors, a registration form, a "frequently asked questions" section to educate the investors about the receivership process, and an email address (naturaldiamondsreceivership@lklsg.com) and phone number (786.347.2563), so the investors may contact the Receiver directly with questions that were not answered by navigating the website;

viii. Establishing a receivership bank account to deposit and safeguard receivership funds;

ix. Providing notice of the Appointment Order to certain former employees, and conducting interviews of those employees;

x. Providing notice of the Appointment Order to certain vendors including Ideofuzion, the developer of Argyle's cryptocurrency technology, including the blockchain and code;

xi. Securing the premises where Argyle (and also EFDG and NDIC) operated, and the books and records within;

xii. Shutting down Argyle's business website;

xiii. Ceasing all of Argyle's business operations; and

xiv. Investigating potential targets for purposes of ancillary receivership litigation for the benefit of the Receivership Estate and investors.[4]

The Receiver respectfully requests that this Court appreciate the difficulty, challenge, and magnitude of the tasks that he and his professionals have been confronted with and the time-pressure under which they were obligated to perform those tasks, neither of which can be gleaned from an after-the-fact review of the attached time records. This case was, and continues to be, challenging because of the complexity of the business operations involved, the volume of documents and data, and the voluminous financial transactions from the relevant business and

---

[4] The Receiver anticipates serving additional demand letters and filing lawsuits in the next few months.

personal accounts. Again, the Receiver's three Reports detail many of the Receiver's and his professionals' immediate accomplishments.

In addition, as stated above, many receiverships are, generally speaking, front-loaded for, at a minimum, the first several months of the Receivership. In other words, a great deal of work is performed during the early periods during which the Receiver is cancelling leases, interviewing witnesses, obtaining assets, testifying in court, and otherwise "getting up to speed" to stabilize the assets of the receivership. The Receiver also respectfully requests that this Court appreciate the large amount of risk undertaken by the Receiver and his team because there was no guaranty upon the Receiver's appointment that there would be any assets ultimately secured to compensate the Receiver or his team. In fact, there are still currently no funds in Argyle's bank accounts and there are currently limited known Argyle assets with currently unknown values (*i.e.*, Argyle's cryptocurrency technology, including the blockchain and code).[5] Indeed, for that reason, and like the First and Second Interim Fee Applications that the Court has already granted [DE 133, 137, 160, and 180], the Receiver has no current expectation that the fees sought in this Fee Application will be paid anytime soon; the Receiver nevertheless files this Fee Application because it is required by the Appointment Order, which payment – like with the First and Second Interim Fee Applications – will be made when the Receivership has sufficient assets with which to do so.

<b><u>DESCRIPTION OF SERVICES</u></b>

**I.     The Receiver**

The Receiver is a trial attorney who has served as a District Court receiver and receiver's counsel in numerous SEC, FTC, and Commodity Futures Trading Commission cases during his nearly 30-year career. The Receiver is Chair of his law firm's Receivership Practice Group and

---

[5] The Receiver will be investigating and evaluating whether Argyle's cryptocurrency technology has any value, and if so, how much and how best to sell it.

has served as the firm's Managing Partner since the firm's inception. The Receiver has served as Receiver, or as counsel to receivers, in numerous state and federal receiverships and is proud to say that, over the course of his career, he has helped to recover over $300 million for defrauded victims. Because the Receiver views receivership cases as serving the public's interest, the Receiver agreed to substantially reduce his standard hourly rate of $695.00 per hour, which is what the Receiver charges his typical commercial clients, to $395.00 per hour for purposes of this case. The Receiver's $395.00 hourly rate is currently one of the lower receiver rates in the Southern District of Florida in agency receivership cases. The Receiver also capped his rate during the life of this case.

The Receiver also sought commensurate reductions from all of his professionals. The Receiver also obtained their agreement to cap their rates during the life of this case.

## II.     Information about this Fee Application

This Application has been prepared in accordance with the SEC's Billing Instructions for Receivers in Civil Actions Commenced by the SEC. Pursuant to the Billing Instructions, Exhibit A attached hereto is a Certification by the Receiver confirming, under oath, that this Fee Application complies with the SEC's Billing Instructions.

Exhibit B attached hereto is the updated quarterly Standardized Fund Accounting Report, also known as the SFAR, which is the SEC's accounting form required in civil receivership actions commenced by the SEC.

Exhibit C attached hereto memorializes the professional services rendered by the Receiver, and the necessary and reasonable non-reimbursed out-of-pocket costs attendant to those services. Exhibit C, which was prepared based on the Receiver's contemporaneous daily time records, includes a daily description of the services rendered by the Receiver, along with the hours expended at his reduced hourly rate. Exhibit C reflects that the Receiver billed a total of 29.50

8

hours, at a reduced hourly rate of $395.00 per hour, for a total of $11,652.50. The Receiver's partner, who serves as co-counsel, billed a total of 25.40 hours, at a reduced hourly rate of $350.00 per hour, for a total of $8,890.00. Finally, the Receiver's paralegal billed a total of 4.30 hours, at a reduced hourly rate of $150.00 per hour, for a total of $645.00. Exhibit C also reflects that the Receiver's firm incurred costs of $506.12 during the subject period, bringing the current total due the Receiver and his firm to $21,693.62.

Exhibits D and E attached hereto memorialize the professional services rendered by the Receiver's professionals, and the necessary and reasonable non-reimbursed out-of-pocket costs attendant to their services, which are described more fully below.

Exhibit F is a proposed Order granting this Fee Application.

### III.   The Receiver's Counsel

Pursuant to paragraph 50 of Section XIII of the Appointment Order, the Receiver was required to obtain permission from this Court to retain his legal counsel. On July 10, 2019, the Receiver filed his Motion to Employ Legal Counsel (the law firms of Sallah Astarita & Cox, LLC (the "Sallah Firm") and Silver Law Group (the "Silver Firm")). The Motion to Employ Legal Counsel was resolved by agreed order [DE 126], and confirmed the appointment of counsel *nunc pro tunc*, so this Fee Application also includes counsels' time for their work already done to benefit the Receivership Estate.

Engaging the Sallah and Silver Firms eliminated any learning curve associated with engaging new counsel and saved the victims of this Receivership Estate tens of thousands of dollars in legal fees. The Sallah and Silver Firms have dozens of years of receivership experience and have served as receivers or lead counsel to receivers in countless receiverships involving Ponzi schemes, investment fraud schemes, deceptive telemarketing schemes, and the like in the Southern District of Florida and elsewhere around the Country. Like the Receiver, the attorneys at the Sallah and Silver Firms have all agreed to substantially reduce their standard hourly rates (which range

from $400.00 to $650.00 per hour) to $395.00 per hour in order to further increase potential recoveries for the benefit of the Receivership Estate. They have also agreed to cap their rates during the life of this case.

The Receiver's firm (Levine Kellogg Lehman Schneider + Grossman LLP), which will be handling all issues relating to the Seigels and Relief Defendant HS Management, have agreed to the same reductions and the same cap during the life of this case. The Receiver will, of course, ensure that there is no duplication of efforts by his attorneys.

Indeed, the Sallah Firm has been doing the bulk of the work in the Corporate Monitor Action and will continue to do so in this case (except as it relates to the Seigels and Relief Defendant HS Management). The Silver Firm will be used primarily for specialty litigation work involving securities claims.

As stated above, the professional services rendered by the Receiver's firm, and the necessary and reasonable non-reimbursed out-of-pocket costs attendant to those services, are described in more detail on Exhibit C. Exhibit C was prepared based on the Receiver's firm's contemporaneous daily time records, and includes a daily description of the services rendered, the hours expended, and the attorney's reduced hourly rate. The professional services rendered by the Sallah Firm, and the necessary and reasonable non-reimbursed out-of-pocket costs attendant to those services, are described in more detail on Exhibit D.[6] Exhibit D, which was prepared based on the Sallah Firm's contemporaneous daily time records, includes a daily description of

---

[6] Mr. Rengstl is Of Counsel at the Sallah Firm and has handled most of the legal work on the Receiver's behalf. Robert Carey was engaged by the Sallah Firm as a contract attorney. Mr. Carey also reduced his hourly rate to $275.00, from $395.00, for the benefit of the victims. Mr. Carey's contractor invoice is part of Exhibit D, so his hours and fees are part of the total amount for the Sallah Firm.

the services rendered, the hours expended, and the attorney's reduced hourly rate.[7] Exhibit D reflects that the Sallah Firm has charged a total of 108.90 hours for a total of $42,079.50 and incurred costs of $231.35 during the subject period, bringing the current total due the Sallah Firm to $42,310.85.[8]

Exhibit E reflects that the Silver Firm – which has very minimal time in the case – has charged a total of 2.10 hours for a total of $829.50.

## IV. Summary Chart

For the Court's convenience, the following is a summary of the total fees and costs of the Receiver and his professionals during the subject period covered by this Fee Application:

| Name | Hours | Fees | Expenses | Total |
|---|---|---|---|---|
| Receiver and Levine Kellogg Lehman Schneider + Grossman LLP | 59.20 | $21,187.50 | $506.12 | $21,693.62 |
| Sallah Astarita Cox LLC | 108.90 | $42,079.50 | $231.35 | $42,310.85 |
| Silver Law Group | 2.10 | $829.50 | 0 | $829.50 |
| Total | 170.20 | $64,096.50 | $737.47 | $64,833.97 |

## I. Summary of Services Rendered by the Receiver and his Professionals

The professional services rendered by the Receiver and his professionals, and the necessary and reasonable non-reimbursed out-of-pocket costs attendant to those services, are described in more detail on Exhibits C through E attached hereto. The Receiver and his professionals have gone to great lengths to eliminate all block-billing from their respective time entries and to provide

---

[7] Counsels' billing entries in Exhibits C, D, and E consist of "Case Administration" and "Asset Analysis and Recovery" entries pursuant to the SEC's Billing Instructions.

[8] Mr. Sallah spent several hours during the applicable period, but did not bill them as a courtesy to the Receivership Estate and its victims.

as detailed time entries as possible without revealing information protected by the attorney-client privilege, accountant-client privilege, or work product doctrine.

The attached records set forth in narrative form the detailed nature and extent of the professional services rendered by the Receiver and his professionals. These recitals, however, constitute only a summary of the time spent. It must be recognized that a mere reading of the time summaries attached hereto cannot completely reflect the full range of services rendered by the Receiver and his professionals, the complexity of the issues, and the pressures of time and performance which have been placed upon the Receiver and his professionals in connection with this case.

The schedules of disbursements for expenses, which are also part of Exhibits C through E, are those actual and necessary expense items, such as photocopy charges, long distance telephone charges, telecopy charges, delivery charges, and various expenses incurred in connection with this matter. All of these expense items would typically be billed by the Receiver and his professionals to their general commercial clients. In addition, all travel time was reduced by 50% in accordance with the SEC's Billing Instructions.

As set forth above, the Receiver and his professionals have not been paid *any* compensation in connection with the services and expenses set forth herein, and do not expect to be paid for those services until the Receivership has sufficient resources with which to make those payments.

**II.     Applicable Legal Standard and Analysis**

In determining attorneys' fees, a court must (1) determine the nature and extent of the services rendered; (2) determine the value of those services; and (3) consider the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F. 2d. 714 (5th Cir. 1974). *See Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 877-78 (11th Cir. 1990) (bankruptcy fee award case addressing the issue of attorney's fees generally before considering specific requirements in the

bankruptcy context). The twelve factors set forth in *Johnson*, a case involving an award of attorneys' fees under Federal civil rights statutes, as incorporated by the Eleventh Circuit in *Grant*, a bankruptcy case, are: (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or by the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

### A. The Time and Labor Required

The foregoing summary description, together with the time records attached hereto, detail the time, nature, and extent of the professional services rendered by the Receiver and his professionals during the period covered by this Application. The Receiver and his professionals believe that the time spent is justified by the results that have been achieved thus far. The Receiver and his professionals believe they have played a significant role during the course of this proceeding and will continue to do so in the future.

### B. The Novelty and Difficulty of the Questions Presented

This case required a high level of skill to secure receivership assets and to carry out the Receiver's many duties.

### C. The Skill Requisite to Perform the Services Properly

In order to perform the required services, substantial legal skill and experience in the areas of commercial law and litigation were required of the Receiver and his professionals. The Receiver is acutely aware of the financial considerations arising in receiverships such as this. Accordingly, as this Court may gather from the Exhibits attached hereto, the Receiver has staffed the

administration of this case efficiently under the direction and immediate supervision of the Receiver.

### D. The Preclusion of Other Employment Due to This Case

Although the Receiver and his professionals were not explicitly precluded as a result of this case from accepting other matters, matters in this case were treated by the Receiver and his professionals in an expeditious and professional manner. Also, this case required the Receiver and his professionals to devote a significant amount of time to this case, to the preclusion of expending time on other active matters.

### E. The Customary Fee

The hourly rates of the Receiver and his professionals set forth on the attached exhibits reflect a rate that is generally lower than the hourly rates billed by the Receiver and his professionals to clients in other cases, as well as rates that are consistent with or even lower than other receivers and their retained law firms in similar matters. The Receiver's and his professionals' reduced rates have been confirmed and approved in many other matters in which the Receiver and his professionals have been involved.

### F. Whether the Fee Is Fixed or Contingent

The compensation of the Receiver and his professionals is subject to the approval of this Court, and the Receiver and his professionals have not received any compensation for their services rendered to date. The above factors should be taken into consideration by this Court, and the compensation should reflect the assumption of the risk of non-payment and delay in payment that may be borne in future applications herein.

### G. The Time Limitations Imposed

This case imposed time limitations on the Receiver and his professionals due to the necessity for rapid resolutions of issues.

### H. The Experience, Reputation, and Ability of the Professionals

The Receiver and his professionals enjoy a fine reputation and have proven substantial ability in the fields of equity receiverships, litigation, and business reorganization.

### I. The "Undesirability" of the Case

This case is not the least bit undesirable, and the Receiver and his professionals are honored and privileged to serve in this case.

### J. The Nature and Length of Professional Relationship

The Receiver and his professionals have had no prior relationship with the parties in this case prior to the initial related proceeding of the Corporate Monitor Action.

### K. Awards in Similar Cases

The amounts requested by the Receiver and his professionals are not unreasonable in terms of awards in cases of similar magnitude and complexity.  The compensation requested by the Receiver and his professionals comports with the mandate of applicable law, which directs that services be evaluated in light of comparable services performed in other cases in the community. As stated above, the hourly rates requested by the Receiver and his professionals are generally lower than the ordinary and usual hourly rates billed by the Receiver and his professionals to not only their ordinary clients, notwithstanding the risks associated with this case, but also other receivers and their retained firms who bill at higher hourly rates.

### L. The Source of Payment for the Amounts Sought Hereunder

The amounts for which payment is requested hereunder shall be paid from funds that are held in the Argyle receivership bank account.  However, there are currently _no_ funds in that account.  The Receiver requests that this Court still grant this Fee Application, and if and when the Argyle receivership account is funded in the amount of at least the total amount sought in this Fee Application, then the requested payments shall be made from the funds in the Argyle

receivership account.

## CONCLUSION

The Receiver respectfully requests that this Court enter the proposed Order, attached as Exhibit F, approving this Third Fee Application of payment and reimbursement of the requested fees and costs, and for such other relief that is just and proper.  As stated above, the Receivership Estate does not currently have sufficient funds with which to pay the fees requested in this Fee Application.  The Receiver, therefore, merely seeks an order of entitlement, and the Receiver will pay the amounts sought when the Receivership Estate has sufficient funds within which to do so.

## LOCAL RULE CERTIFICATION

Pursuant to Local Rule 7.1(a)(3), the Receiver hereby certifies that he has conferred with counsel for the SEC, the Defendants, and the Relief Defendants regarding this Fee Application.  The SEC states that it has no objection.  Counsel for the Seigels and Relief Defendant HS Management states that they have no objection.  Counsel for Relief Defendant G7 states that it has no objection.  Defendant Jose Aman states that he has no objection.

Dated: March 6, 2020

Respectfully submitted,

**SALLAH ASTARITA & COX, LLC**
*Co-counsel for the Receiver*
3010 North Military Trail, Suite 210
Boca Raton, FL 33431
Tel.: (561) 989-9080
Fax: (561) 989-9020

/s/Patrick J. Rengstl
**Patrick J. Rengstl, P.A.**
Fla. Bar No. 0581631
Email: pjr@sallahlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 6, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ Patrick J. Rengstl
PATRICK J. RENGSTL, P.A.

## SERVICE LIST

*Counsel for Securities and Exchange Commission:*
Amie Riggle Berlin, Esq.
Senior Trial Counsel
Linda S. Schmidt, Esq.
Senior Trial Counsel
Securities and Exchange Commission
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Email: berlina@sec.gov

*Counsel for Harold Seigel, Jonathan Seigel, and H.S. Management Group LLC:*
Ellen M. Kaplan, Esq.
Law Office of Ellen M. Kaplan P.A.
9900 W Sample Rd Fl 3
Coral Springs, Florida 33065
Email: ellenkaplanesq@aol.com

*Counsel for Gold 7 of Miami, LLC:*
Aaron Resnick, Esq.
Law Offices of Aaron Resnick, P.A.
100 Biscayne Boulevard, Suite 1607
Miami, Florida 33132
E-mail: aresnick@thefirmmiami.com

*Counsel for Winners Church, Frederick Shipman, and Whitney Shipman:*
Carl Schoeppl, Esq.
Terry A.C. Gray, Esq.
Schoeppl Law, P.A.
4651 North Federal Highway
Boca Raton, Florida 33431
Email: carl@schoeppllaw.com
          tgray@schoeppllaw.com

### *Via Email*

*Jose Aman, pro se*
E-mail: joseaman123@gmail.com