**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**(Palm Beach Division)**

**Case No. 9:19-CV-80633-ROSENBERG**

SECURITIES AND EXCHANGE COMMISSION,

     Plaintiff,

v.

NATURAL DIAMONDS INVESTMENT CO.,
et al.,

     Defendants,

H.S. MANAGEMENT GROUP LLC, et al.,

     Relief Defendants.

_____/

**RECEIVER'S MOTION TO COMPEL SEIGELS'**
**COMPLIANCE WITH THE TRO AND RECEIVERSHIP ORDER**

     Jeffrey C. Schneider, not individually, but solely in his capacity as the Court-appointed receiver (the "Receiver"),[1] moves this Court for the entry of an order compelling Defendant Harold Seigel ("Seigel") and Relief Defendant H.S. Management Group, LLC ("HS")—who received ***$3.8 million*** from the Receivership Entities—to fully comply with this Court's (a) Order Granting Temporary Restraining Order, Asset Freeze, and Other Emergency Relief [DE 12]("TRO"); and (b) Order Granting Plaintiff Securities and Exchange Commission's Motion for Appointment of Receiver [DE 20] ("Receivership Order").

---

[1] This Court appointed Mr. Schneider as receiver for Argyle Coin, LLC ("Argyle"). On March 28, 2019, two months before the Receiver's appointment, the Honorable Donald Middlebrooks appointed Mr. Schneider as Corporate Monitor for Defendants Natural Diamonds Investment Co. ("NDIC") and Eagle Financial Diamond Group, Inc. ("EFDG") in *Rounds v. Natural Diamonds Investment Co., et al.*, Case No. 18-cv-81151 (the "Corporate Monitor Action"). This Court expanded the Receivership to include NDIC and EFDG [DE 94, 104] and the Receiver filed a motion to close the Corporate Monitor Action, which was granted.

**This Court's Orders**

1. In the TRO, this Court issued the following order to Seigel:

> IT IS FURTHER ORDERED that two days prior to the Show Cause Hearing, Defendant H. Seigel shall: (a) make a sworn accounting to this Court and the Commission of all funds, whether in the form of compensation, commissions, income (including payments for assets, shares or property of any kind), and other benefits (including the provision of services of a personal or mixed business and personal nature) received, directly or indirectly, by [Seigel]; (b) make a sworn accounting to this Court and the Commission of all assets, funds, or other properties, whether real or personal, held by [Seigel], jointly or individually, or for its direct or indirect beneficial interest, or over which it maintains control, wherever situated, stating the location, value, and disposition of each such asset, fund, and other property; and (c) provide to the Court and the Commission a sworn identification of all accounts (including, but not limited to, bank accounts, savings accounts, securities accounts and deposits of any kind and wherever situated) in which he (whether solely or jointly),directly or indirectly (including through a corporation, partnership, relative, friend or nominee), either has an interest or over which he has the power or right to exercise control.

(TRO at 19.)

2. This Court issued the same directive to HS (Seigel's entity):

> IT IS FURTHER ORDERED that two days prior to the Show Cause Hearing, Relief Defendant H.S. Management shall: (a) make a sworn accounting to this Court and the Commission of all funds, whether in the form of compensation, commissions, income (including payments for assets, shares or property of any kind), and other benefits (including the provision of services of a personal or mixed business and personal nature) received by H.S. Management directly or indirectly; (b) make a sworn accounting to this Court and the Commission of all assets, funds, or other properties, whether real or personal, held by H.S. Management, jointly or individually, or for [its] direct or indirect beneficial interest, or over which it maintains control, wherever situated, stating the location, value, and disposition of each such asset, fund, and other property; and (c) provide to the Court and the Commission a sworn identification of all accounts (including, but not limited to, bank accounts, savings accounts, securities accounts and deposits of any kind and wherever situated) in which it (whether solely or jointly), directly or indirectly

(including through a corporation, partnership, relative, friend or nominee), either has an interest or over which he has the power or right to exercise control.

(TRO at 15-16.)

3.      The directives contained in the TRO are clear: HS and Seigel were required to submit a sworn accounting to the Court of all monies received and to provide details about all assets or accounts held solely or jointly or over which they have control or a beneficial interest. This was due two days prior to the show cause hearing, which occurred on May 23, 2019.

4.      HS and Seigel, however, have never filed their accountings with the Court.  On June 2, 2020, more than a year after the Court's deadline, and only after the Receiver's prodding, HS and Seigel filed a document titled "Notice of Compliance," which had no attachments and no explanation other than a declaration that they (and Jonathan Seigel) had complied "with all obligations under the TRO."  [DE 208.]  A search of the Court's docket demonstrates that HS and Seigel have never filed an accounting with the Court.

6.      More to the point, the "accounting" that they served on the Receiver did not provide any information regarding any accounts held by either HS or Seigel.  In other words, neither Seigel nor HS identified "accounts (including, but not limited to, bank accounts, savings accounts, securities accounts and deposits of any kind and wherever situated) in which it (whether solely or jointly), directly or indirectly (including through a corporation, partnership, relative, friend or nominee), either has an interest or over which he has the power or right to exercise control."

7.      Without this information, the Receiver is unable to determine or confirm if Seigel or HS have any current assets.  The Receiver is aware that Seigel's wife owns a lavish home in Colorado that is unencumbered.  The Receiver is aware that Seigel is currently living off of his wife's inheritance.  The Receiver does not know if this means that there are bank accounts, savings

accounts, securities accounts, or other assets in which Seigel has a direct or indirect interest or over which he has any control.

8.       Instead, the accounting only generally describes how HS and Seigel supposedly spent the $3.8 million that they received from the Receivership Entities during the Ponzi scheme. But they do not provide, among other things, any information about what happened to the money that they allocated for "salaries" (over $900,000).  They do not provide any information about the money allocated for "marketing" (over $700,000).  They do not provide any back-up documents at all.

9.       The Receivership Order likewise requires all officers of the Receivership Entities to cooperate with the Receiver and to provide sworn information and documentation requested by the Receiver.  Specifically, Paragraph 9 provides:

> The individual Receivership Entity and the entity Receivership Entity's past and/or present officers, directors, agents, attorneys, managers, shareholders, employees, accountants, debtors, creditors, managers and general and limited partners, and other appropriate persons or entities shall answer under oath to the Receiver all questions which the Receiver may put to them and produce all documents as required by the Receiver regarding the business of the Receivership Entity, or any other matter relevant to the operation or administration of the receivership ….

(Receivership Order at 6, ¶ 9.)

10.      In the May 28, 2019 Order of Preliminary Injunction and Other Relief Against All Defendants and Relief Defendant H.S. Management Group LLC [DE 40, the "Preliminary Injunction"], this Court found that Seigel was an officer of both EFDG and NDIC, both of which are Receivership Entities.  Therefore, Seigel is required to provide documentation requested by the Receiver, to the extent such documentation is "regarding the business of the Receivership Entity, or any other matter relevant to the operation or administration of the receivership …" (Receivership Order at 6, ¶ 9.)

4

**The Receiver's requests**

11.     As set forth in the Notice of Settlements and Unopposed Motion for 60 Days to File a Motion to Set Disgorgement and Civil Penalty Amounts as to Defendant Jose Aman and to File the Consents and Final Judgments Against All Other Parties filed by the SEC on June 3, 2020, HS and Seigel have negotiated a settlement with the SEC and have apparently reached a tentative agreement that would result in consent final judgments being issued.  The Receiver was not involved in those negotiations.

12.     Nevertheless, HS and Seigel have asked the Receiver to provide a release from the Receivership Estate so the settlement is a global settlement.  The Receiver is trying to evaluate what assets HS and Seigel have, to assess the potential recoveries the Receivership Estate might be foregoing with such a release, so he asked HS and Seigel to comply with the Court's accounting requirement.

13.     Despite being required by the Court to do so, and despite being reminded by the Receiver to do so, and despite having represented to this Court that they did so, HS and Seigel have refused to provide any additional information.  Counsel for HS and Seigel provided the Receiver until June 30 to consent to a "global settlement," and only then would Seigel "*resume where they left off in their willingness to communicate and cooperate in recovery*."

15.     In the accounting provided by HS and Seigel, the Receiver learned for the first time that a portion of the money received by them had been used for an insurance policy for various diamonds.  As the Court is well aware, many of the diamonds supposedly purchased or held by the Receivership Entities are missing.  Therefore, if there is an insurance policy that provides coverage for the loss or theft of any of those diamonds, that could be a source of recovery for the Receivership.  The Receiver therefore asked Seigel for a copy of that policy.  Counsel for Seigel also refused to produce that.

16.     The Receivership Order requires the Receiver to bring these deficiencies to the Court's (and the SEC's) attention.[2]  Accordingly, the Receiver seeks entry of an order compelling HS and Seigel to fully comply with their obligations under the TRO and to provide any other information and documents requested by the Receiver under the Receivership Order.

## Local Rule 7.1.A.3 Certification

Before filing this motion, the Receiver consulted with HS and Seigel on multiple occasions, requesting that they comply with the Court's orders and the Receiver's requests, but they refused. The Receiver also notified the SEC, as is required under the Receivership Order.

WHEREFORE, the Receiver respectfully requests that the Court compel the Seigels to (a) fully comply with their obligations under the TRO; (b) provide the Receiver with the documents and information he has requested under the Receivership Order; and (c) grant such other relief as is just and proper.

---

[2] Paragraph 26 of the Receivership Order provides: The Receiver shall promptly notify the Court and SEC counsel of any failure or apparent failure of any person or entity to comply in any way with the terms of this Order."

June 26, 2020                                    Respectfully submitted,

                                                **LEVINE KELLOGG LEHMAN**
                                                **SCHNEIDER + GROSSMAN LLP**
                                                201 South Biscayne Boulevard
                                                Citigroup Center, 22nd Floor
                                                Miami, FL 33131
                                                Telephone: (305) 403-8788
                                                Facsimile: (305) 403-8789

                                                By: s/Stephanie Reed Traband
                                                STEPHANIE REED TRABAND
                                                Florida Bar No. 0158471
                                                srt@lklsg.com
                                                mt@lklsg.com
                                                *Counsel for Receiver*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on June 26, 2020, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record in the manner specified in the service list below.

                                                By: */s/ Stephanie Reed Traband*
                                                Stephanie Reed Traband, Esq.

## SERVICE LIST

**Via CM/ECF**

*Counsel for Securities and Exchange Commission:*
Amie Riggle Berlin, Esq.
Senior Trial Counsel
Linda S. Schmidt, Esq.
Senior Trial Counsel
Securities and Exchange Commission
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Email: berlina@sec.gov

7

*Counsel for Harold Seigel, Jonathan Seigel, and H.S. Management Group LLC:*
Ellen M. Kaplan, Esq.
Law Office of Ellen M. Kaplan P.A.
9900 W Sample Rd Fl 3
Coral Springs, Florida 33065
Email: ellenkaplanesq@aol.com

*Counsel for Gold 7 of Miami, LLC:*
Aaron Resnick, Esq.
Law Offices of Aaron Resnick, P.A.
100 Biscayne Boulevard, Suite 1607
Miami, Florida 33132
E-mail: aresnick@thefirmmiami.com

*Counsel for Winners Church, Frederick Shipman, and Whitney Shipman:*
Carl Schoeppl, Esq.
Terry A.C. Gray, Esq.
Schoeppl Law, P.A.
4651 North Federal Highway
Boca Raton, Florida 33431
Email: carl@schoepllaw.com
        tgray@schoepllaw.com

**_Via Email_**

*Jose Aman, pro se*
E-mail: joseaman123@gmail.com