UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(Palm Beach Division)

Case No. 9:19-CV-80633-ROSENBERG

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

NATURAL DIAMONDS INVESTMENT CO.,
et al.,

    Defendants,

H.S. MANAGEMENT GROUP LLC, et al.,

    Relief Defendants.
_____/

### RECEIVER'S UNOPPOSED FOURTH INTERIM APPLICATION FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES TO THE RECEIVER AND HIS PROFESSIONALS; INCORPORATED MEMORANDUM OF LAW

    Pursuant to paragraph 52 of Section XIII of the Order Granting Plaintiff Securities and Exchange Commission's Motion for Appointment of Receiver [DE 20] (the "Appointment Order"), Jeffrey C. Schneider, not individually, but solely in his capacity as the Court-appointed receiver (the "Receiver"),[1] submits his Fourth Interim Application for allowance and payment of

---

[1] This Court appointed Mr. Schneider as receiver for Argyle Coin, LLC ("Argyle"). On March 28, 2019, the Honorable Donald Middlebrooks appointed Mr. Schneider Corporate Monitor for Defendants Natural Diamonds Investment Co. ("NDIC") and Eagle Financial Diamond Group, Inc. ("EFDG") in *Rounds v. Natural Diamonds Investment Co., et al.*, Case No. 18-cv-81151 (the "Corporate Monitor Action"). This Court then expanded the Receivership to include NDIC and EFDG [DE 94, 104] and the Receiver closed the Corporate Monitor Action.

compensation and reimbursement of expenses for the period of January 1, 2020 through September 30, 2020.[2]

The Receiver has conferred with those that are still parties to this case. The Securities and Exchange Commission (the "SEC") consents to the relief requested herein. All Defendants and Relief Defendants (except for Jose Aman) have since settled with the SEC and have had consent judgments entered by the Court, so they are no longer parties to the case. Mr. Aman has also consented to a settlement with the SEC, but the terms will be finalized after his sentencing in the criminal case; because a consent judgment has not yet been entered against Mr. Aman, Receiver consulted with him about this Fee Application, and he advised that consents to the relief requested herein.

## INTRODUCTION

During the period of time covered by this Fee Application, the Receiver is pleased to report that he has secured diamonds and other jewelry that have been appraised **at more than $1.6 million**.

For example, the Receiver secured a settlement of diamonds and jewelry with Mr. DeStefano valued at **more than $500,000**.

The Receiver also assisted the SEC in securing a global settlement with G7 that results in diamonds and jewelry valued at **more than $1 million** being turned over to the Receiver; pursuant to the agreements, those items will be sold and G7 is entitled to a payment of up to $350,000, with the balance being kept by the Receivership Estate for the benefit of the defrauded victims.

---

[2] This Fee Application covers three quarterly periods because there has been, and continues to be, insufficient funds to pay any of the previously-awarded Fee Applications, or this Fee Application, so the Receiver has been trying to limit the use of resources.

2

The Receiver also secured approximately **$20,000** from an unused, pre-receivership legal retainer that had not been previously disclosed to the Receiver but that was discovered through the Receiver's investigation.

The specific details of the work of the Receiver and his professionals is described in more detail below.

## PROCEDURAL BACKGROUND

On May 13, 2019, the SEC filed an emergency action in this Court to enjoin NDIC, EFDG (a/k/a Diamante Atelier), and Argyle (collectively, the "Corporate Defendants"), and their principals. In the Complaint [DE 1], the SEC alleged that the Corporate Defendants were a three-tiered Ponzi scheme that promised hundreds of investors investment returns that ranged from 24% to 100% every year to two years for signing investment contracts supposedly backed by diamonds worth tens of millions of dollars. The Corporate Defendants raised approximately $30 million from approximately 300 investors from late 2013 through 2018.

The SEC also filed a Motion for Temporary Restraining Order, Asset Freeze, and Other Relief [DE 4] and a Motion for Appointment of Receiver [DE 7]. The SEC advised this Court that Mr. Schneider had been appointed as Corporate Monitor for NDIC and EFDG in the Corporate Monitor Action, which was then also pending in the Southern District of Florida. This Court appointed the Receiver for Argyle, which was later expanded to include NDIC and EFDG.

There are currently asset freezes over Defendants Aman, Harold Seigel and Seigel entity HS Management (a relief defendant) [DE 40]. In addition, there were asset freezes over the other relief defendants, including approximately $2 million frozen in accounts in the names of Relief Defendants Winners Church International Inc. of West Palm Beach Florida ("Winners Church") and Fredrick and Whitney Shipman (collectively, the "Shipmans") [DE 59], and dozens of diamonds and jewelry pieces held by Relief Defendant G7 [DE 55]. As discussed below, the SEC

settled its claims against Winners Church and the Shipmans, so the approximately $2 million that was frozen has been deposited into the Court's registry and will, upon Court approval, be transferred to the Receiver to distribute, again upon Court approval, to the victims. Also, as discussed below and during the subject period, a settlement in principle was reached at mediation between the SEC, G7, and the Receiver. Those parties have recently finalized and filed the various settlement documents for Court approval [DE 251, DE 252].

Since his appointment, the Receiver and his professionals have been working diligently to effectuate their obligations under the Appointment Order. The Receiver has been appointed to serve as receiver in numerous cases involving the SEC, the Federal Trade Commission ("FTC"), the Commodity Futures Trading Commission, and various Attorneys General during his nearly 30-year career. The Receiver has also served as counsel, or special counsel, to various receivers in SEC and FTC cases. The Receiver has helped to recover approximately $300 million for defrauded investors during the course of his career. He considers it an honor and a privilege to serve in this capacity.

Throughout this process, the Receiver and his professionals have worked cooperatively with the SEC and other agencies, with each side mindful of their respective responsibilities and duties. The coordination of the Receiver's and the SEC's efforts has resulted in several immediate accomplishments (further discussed below) for the benefit of the Receivership Estate and, most importantly, victimized investors.

## DETAILS OF ACTIVITIES ACCOMPLISHED

As more fully discussed in the Receiver's five Reports [DE 111-1, DE 144-1, DE 185-1, DE 199-1, and DE 230-1, respectively], the Receiver has accomplished much since his appointment for the benefit of the Receivership Estate and investors. Such accomplishments include the following:

i. Testifying at the May 23, 2019 show cause hearing regarding Winners Church and the Shipmans, and providing a declaration to the SEC regarding the dozens of diamonds and jewelry pieces held by G7, which ultimately resulted in asset freezes over those Relief Defendants' assets in the amount of approximately $2 million [DE 5-12, DE 55, DE 59]. The SEC settled its claims against Winners Church and the Shipmans transferred to the Court's registry approximately $2 million which will, upon Court-approval, be transferred to the Receiver to distribute, again upon Court-approval, to the victims;

ii. Moving, which the Court granted, for authority to sell Aman's fiancée's diamond ring and the 104 pouches of uncut, unpolished colored diamonds that the Receiver obtained from Aman [DE 168, 179]. The current plan is to conduct a future auction on the internet after first marketing the auction through online internet advertising, telemarketing, e-marketing, social networking, and advance auction promotions in local and regional newspapers, although the Receiver is also in talks with potential private purchasers as well. The Receiver anticipates conducting the auction once the diamond industry further rebounds from the COVID-19 crisis. All sales proceeds will be placed in the Argyle receivership account for the benefit of victims. The Receiver's appraiser has appraised the items, but the Receiver cannot disclose the appraised values because doing such would likely lower any offers or bids he ultimately receives;

iii. Demanding, negotiating, and ultimately obtaining possession of 38 pieces of jewelry and diamonds from non-party Carmelo De Stefano pursuant to an Agreed Order [DE 73]. The Receiver met with Mr. De Stefano and his counsel on September 27, 2019 and October 23, 2019, to discuss relevant matters and to ultimately attempt to obtain his consent to an agreed turnover of all of the subject jewelry/diamonds for the benefit of the Receivership Estate. Mr. De Stefano and the Receiver came to an agreement in principle regarding a settlement of the jewelry/diamonds. His counsel and the Receiver then finalized the settlement papers, and during the applicable period, the Receiver filed a motion to approve the settlement agreement, which the Court promptly granted [DE 197-198]. As a result of the settlement, Mr. De Stefano has relinquished any interest in the diamonds/jewelry. The Receiver filed a motion to sell the subject diamonds/jewelry for the benefit of the victims, which the Court promptly granted [DE 200, 201]. The Receiver's appraiser has also appraised the diamonds/jewelry. The Receiver's appraiser's appraised value for the 38 pieces is more than **$500,000**.[3] The Receiver also anticipates selling these pieces via a

---

[3] The total minimum appraisal range was previously disclosed because the matter involved a proposed settlement and therefore the settlement's consideration was properly disclosed.

        future auction on the internet once the diamond industry further rebounds from the COVID-19 crisis. All sales proceeds will be placed in the Argyle receivership account for the Receivership Estate's benefit;

iv. Twice inspecting the 53 diamonds/jewelry held by G7 for purposes of the G7 mediation that occurred on March 3, 2020 on the critical "value" issue[4];

v. Attending the G7 mediation and agreeing in principle to a global settlement between the SEC, G7, and Receiver regarding the 53 diamonds/jewelry held by G7. G7 and the Receiver recently finalized the settlement papers, and the Receiver filed a motion to approve the G7 settlement agreement [DE 252]. The Receiver anticipates that the ultimate monetized result of the G7 global settlement will likely infuse **significant additional funds** into the Receivership Estate;

vi. Securing **$20,546.00** of remaining retainer funds held by two law firms that previously represented Argyle. The Receiver was previously unaware of these funds and learned about them through his own investigation during the applicable period;

vii. Moving to employ the accountants at the accounting firm Kaufman & Company P.A., which the Court promptly granted [DE 202, 210]. Dana M. Kaufman, J.D., CPA, CVA, CFE, who is the principal shareholder of the firm, will have primary responsibility for preparing the necessary tax returns for this matter;

viii. Moving to require Harold Seigel and HS to account to the Receiver on various financial issues [DE 216, 218], which the Court recently granted under the Order Memorializing Rulings [DE 244]. Because Harold Seigel and HS have objected to that Order, the Receiver continues to have to address these issues;

ix. Expanding the Receivership to include NDIC and EFDG and consolidating those entities from the Corporate Monitor Action to further streamline this proceeding for the benefit of all the victims [DE 94, 104];

x. Seizing four jumping horses, and then relocating them, maintaining them, and eventually selling them, for a total of **$175,500.00**, the funds of which the Receiver has received and deposited in the EFDG/NDIC

---

However, the individual appraised value for each of the 38 pieces was redacted in the appraisal because disclosing such would likely lower any offers or bids the Receiver ultimately receives.

[4] The Receiver's appraiser completed the appraisal shortly before the mediation.

        receivership account (the account that funded the horses' care, maintenance, and appraisals);

xi. Communicating by email and telephone with investors regarding the status of this proceeding and creating a receivership website [naturaldiamondsreceivership.com](naturaldiamondsreceivership.com) for more efficient updates to and communications with investors and the public. The receivership website also contains important court filings, letters from the Receiver to the investors, a registration form, a "frequently asked questions" section to educate the investors about the receivership process, and an email address ([naturaldiamondsreceivership@lklsg.com](naturaldiamondsreceivership@lklsg.com)) and phone number (786.347.2563), so the investors may contact the Receiver directly with questions that were not answered by navigating the website;

xii. Establishing a receivership bank account to deposit and safeguard receivership funds;

xiii. Providing notice of the Appointment Order to certain former employees, and conducting interviews of those employees;

xiv. Providing notice of the Appointment Order to certain vendors including Ideofuzion, the developer of Argyle's cryptocurrency technology, including the blockchain and code;

xv. Securing the premises where Argyle (and also EFDG and NDIC) operated, and the books and records within;

xvi. Shutting down Argyle's business website;

xvii. Ceasing all of Argyle's business operations;

xviii. Investigating potential targets for purposes of ancillary receivership litigation for the benefit of the Receivership Estate and investors; and

xix. Issuing many subpoenas and initial pre-suit demand letters.

    The Receiver respectfully requests that this Court appreciate the difficulty, challenge, and magnitude of the tasks that he and his professionals have been confronted with and the time-pressure under which they were obligated to perform those tasks, neither of which can be gleaned from an after-the-fact review of the attached time records. This case was, and continues to be, challenging because of the complexity of the business operations involved, the volume of

documents and data, and the voluminous financial transactions from the relevant business and personal accounts. Again, the Receiver's five Reports detail many of the Receiver's and his professionals' immediate accomplishments.

The Receiver also respectfully requests that this Court appreciate the large amount of risk undertaken by the Receiver and his team because there was no guaranty upon the Receiver's appointment that there would be any assets ultimately secured to compensate the Receiver or his team. *In fact, there are still <u>insufficient</u> funds in Argyle's receivership bank account to pay this Fee Application or the previously-awarded Fee Applications*. Indeed, for that reason, and like the First, Second and Third Interim Fee Applications that the Court has already granted [DE 133, DE 137, DE 160, DE 180, and DE 194-195], the Receiver has no current expectation that the fees sought in this Fee Application will be paid anytime soon; the Receiver nevertheless files this Fee Application in anticipation that payment will be made when the Receivership has sufficient assets with which to do so.

## **DESCRIPTION OF SERVICES**

### I.    **The Receiver**

The Receiver is a trial attorney who has served as a District Court receiver and receiver's counsel in numerous SEC, FTC, and Commodity Futures Trading Commission cases during his nearly 30-year career. The Receiver is Chair of his law firm's Receivership Practice Group and has served as the firm's Managing Partner since the firm's inception. Because the Receiver views receivership cases as serving the public's interest, the Receiver agreed to substantially reduce his standard hourly rate of $695.00 per hour, which is what the Receiver charges his typical commercial clients, to $395.00 per hour for purposes of this case. The Receiver's $395.00 hourly rate is currently one of the lower receiver rates in the Southern District of Florida in receivership cases. The Receiver also capped his rate during the life of this case.

The Receiver also sought commensurate reductions from all of his professionals. The Receiver also obtained their agreement to cap their rates during the life of this case.

## II.     Information about this Fee Application

This Application has been prepared in accordance with the SEC's Billing Instructions for Receivers in Civil Actions Commenced by the SEC. Pursuant to the Billing Instructions, Exhibit A attached hereto is a Certification by the Receiver confirming, under oath, that this Fee Application complies with the SEC's Billing Instructions.

Exhibit B attached hereto is the updated quarterly Standardized Fund Accounting Report, also known as the SFAR, which is the SEC's accounting form required in civil receivership actions commenced by the SEC.

Exhibit C attached hereto memorializes the professional services rendered by the Receiver, and the necessary and reasonable non-reimbursed out-of-pocket costs attendant to those services. Exhibit C, which was prepared based on the Receiver's contemporaneous daily time records, includes a daily description of the services rendered by the Receiver, along with the hours expended at his reduced hourly rate. Exhibit C reflects that the Receiver billed a total of 125 hours, at a reduced hourly rate of $395.00 per hour, for a total of $49,375.00.

Exhibits D, E, F, and G attached hereto memorialize the professional services rendered by the Receiver's professionals, and the necessary and reasonable non-reimbursed out-of-pocket costs attendant to their services, which are described more fully below.

Exhibit H is a proposed Order granting this Fee Application.

## III.    The Receiver's Counsel and Their Services

Pursuant to paragraph 50 of Section XIII of the Appointment Order, the Receiver was required to obtain permission from this Court to retain his legal counsel. On July 10, 2019, the Receiver filed his Motion to Employ Legal Counsel (the law firms of Sallah Astarita & Cox, LLC (the "Sallah Firm") and Silver Law Group (the "Silver Firm")), which was resolved by agreed

order [DE 126]. The Sallah and Silver Firms have dozens of years of receivership experience and have served as receivers or lead counsel to receivers in countless receiverships involving Ponzi schemes, investment fraud schemes, deceptive telemarketing schemes, and the like in the Southern District of Florida and elsewhere around the Country. Like the Receiver, the partners and of counsel at the Sallah and Silver Firms have all agreed to substantially reduce their standard hourly rates (which range from $400.00 to $650.00 per hour) to $395.00 per hour in order to further increase potential recoveries for the benefit of the Receivership Estate. Associates are billed at less than that maximum reduced rate. They have also agreed to cap their rates during the life of this case.

The Receiver's firm (Levine Kellogg Lehman Schneider + Grossman LLP), which handles all issues relating to the Seigels and Relief Defendant HS Management, have agreed to similar reductions and a cap of $350.00 during the life of this case. The Receiver has endeavored to prevent duplication of efforts by his attorneys.

The professional services rendered by the Sallah Firm, and the necessary and reasonable non-reimbursed out-of-pocket costs attendant to those services, are described in more detail on Exhibit D. Exhibit D, which was prepared based on the Sallah Firm's contemporaneous daily time records, includes a daily description of the services rendered, the hours expended, and the attorney's reduced hourly rate.[5] Exhibit E reflects that the Sallah Firm has charged a total of 272.10 hours for a total of $106,135.50 and incurred costs of $517.89 during the subject period, bringing the current total due the Sallah Firm to $106,653.39.

As stated above, the professional services rendered by the Receiver's firm, and the necessary and reasonable non-reimbursed out-of-pocket costs attendant to those services, are

---

[5] Counsels' billing entries in Exhibits D, E, and F consist of "Case Administration" and "Asset Analysis and Recovery" entries pursuant to the SEC's Billing Instructions.

described in more detail on Exhibit E. Exhibit E was prepared based on the Receiver's firm's contemporaneous daily time records, and includes a daily description of the services rendered, the hours expended, and the attorney's reduced hourly rate. The Receiver's partner, Stephanie Reed Traband, who serves as co-counsel, billed a total of 131.20 hours, at a reduced hourly rate of $350.00 per hour, for a total of $45,920.00. Finally, the Receiver's paralegal billed a total of 30.5 hours, at a reduced hourly rate of $150.00 per hour, for a total of $4,575.00. Exhibit E also reflects that the Receiver's firm incurred costs of $792.66 during the subject period.

Exhibit F reflects that the Silver Firm – which has very minimal time in the case – has charged a total of 7.2 hours for a total of $2,402.00. Mr. Silver billed 4.6 hours at a reduced hourly rate of $395.00 per hour, for a total of $1,817.00. Mr. Silver's associate, Ryan Schwamm, billed a total of 2.6 hours at a rate of $225.00 for a total of $585.00. The total fee due to the Silver Firm is $2,402.00.

Lastly, Exhibit G reflects the time spent so far by the accountants retained by the Receiver to to prepare and file the Receivership's tax returns for the Receivership Entities. On June 3, 2020, this Court entered an order [DE 210] granting the Receiver's unopposed motion to retain Kaufman & Company, P.A.. The Court approved the reduced rates proposed by the Receiver and Kaufman and Company for the accounting services to be provided--$382.50 for the primary accountant, Dana Kaufman. Mr. Kaufman billed 2.5 hours for a total of $956.25 during the subject period.

The schedules of disbursements for expenses, which are also part of Exhibits D through G, are those actual and necessary expense items, such as photocopy charges, long distance telephone charges, telecopy charges, delivery charges, and various expenses incurred in connection with this matter. All of these expense items would typically be billed by the Receiver and his professionals to their general commercial clients. In addition, all travel time was reduced by 50% in accordance with the SEC's Billing Instructions.

As set forth above, the Receiver and his professionals have <u>not</u> been paid *any* compensation in connection with the services and expenses set forth herein, and do not expect to be paid for those services until the Receivership has sufficient resources with which to make those payments.

IV.     **Summary Chart**

For the Court's convenience, the following is a summary of the total fees and costs of the Receiver and his professionals during the subject period covered by this Fee Application:

| Name | Hours | Fees | Expenses | Total |
| --- | --- | --- | --- | --- |
| Receiver | 125.00 | $49,375.00 | $0 | $49,375.00 |
| Sallah Astarita Cox LLC | 272.10 | $106,135.50 | $517.89 | $106,653.39 |
| Levine Kellogg Lehman Schneider + Grossman LLP | 161.70 | $50,495.00 | $792.66 | $51,287.66 |
| Silver Law Group | 7.2 | $2,402.00 | $0 | $2,402.00 |
| Kaufman & Company, P.A. | 2.5 | $956.25 | $0 | $956.25 |
| **Total** | **574.8** | **$209,363.75** | **$1,310.55** | **$210,674.30** |

Although the total amount of this Fee Application is larger than prior fee applications, the requested amounts are justified for several reasons. First, this Fee Application is for a much longer period of time of nine (9) months as opposed to three (3) months. Second, there was a larger volume of required work during the subject period compared to prior periods, as further explained in the attached detailed individual billing entries. Third, during the subject period, the Receiver secured a settlement of diamonds/jewelry valued at **more than $500,000** with Mr. De Stefano. Fourth, during the subject period, the Receiver assisted with securing a global settlement in principle at mediation with G7 and the SEC of diamonds/jewelry of **significant value that will likely add six figures for the Receivership Estate's benefit**, and the parties have filed their

respective settlement papers for the Court to approve [DE 251, DE 252]. Fifth, the Receiver secured approximately **$20,000** in unused pre-receivership Argyle legal retainer fees that were undisclosed since the Receiver's appointment but were discovered through the Receiver's diligence and investigation.

**V.     Applicable Legal Standard and Analysis**

In determining attorneys' fees, a court must (1) determine the nature and extent of the services rendered; (2) determine the value of those services; and (3) consider the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F. 2d. 714 (5th Cir. 1974). *See Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 877-78 (11th Cir. 1990) (bankruptcy fee award case addressing the issue of attorney's fees generally before considering specific requirements in the bankruptcy context). The twelve factors set forth in *Johnson*, a case involving an award of attorneys' fees under Federal civil rights statutes, as incorporated by the Eleventh Circuit in *Grant*, a bankruptcy case, are:  (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or by the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

**A.     The Time and Labor Required**

The foregoing summary description, together with the time records attached hereto, detail the time, nature, and extent of the professional services rendered by the Receiver and his professionals during the period covered by this Application. The Receiver and his professionals believe that the time spent is justified by the results that have been achieved thus far. The Receiver

and his professionals believe they have played a significant role during the course of this proceeding and will continue to do so in the future.

**B.     The Novelty and Difficulty of the Questions Presented**

This case required a high level of skill to secure receivership assets and to carry out the Receiver's many duties.

**C.     The Skill Requisite to Perform the Services Properly**

In order to perform the required services, substantial legal skill and experience in the areas of commercial law and litigation were required of the Receiver and his professionals. The Receiver is acutely aware of the financial considerations arising in receiverships such as this. Accordingly, as this Court may gather from the Exhibits attached hereto, the Receiver has staffed the administration of this case efficiently under the direction and immediate supervision of the Receiver.

**D.     The Preclusion of Other Employment Due to This Case**

Although the Receiver and his professionals were not explicitly precluded as a result of this case from accepting other matters, matters in this case were treated by the Receiver and his professionals in an expeditious and professional manner. Also, this case required the Receiver and his professionals to devote a significant amount of time to this case, to the preclusion of expending time on other active matters.

**E.     The Customary Fee**

The hourly rates of the Receiver and his professionals set forth on the attached exhibits reflect a rate that is generally lower than the hourly rates billed by the Receiver and his professionals to clients in other cases, as well as rates that are consistent with or even lower than other receivers and their retained law firms in similar matters. The Receiver's and his

professionals' reduced rates have been confirmed and approved in many other matters in which the Receiver and his professionals have been involved.

### F. Whether the Fee Is Fixed or Contingent

The compensation of the Receiver and his professionals is subject to the approval of this Court, and the Receiver and his professionals have not received any compensation for their services rendered to date. The above factors should be taken into consideration by this Court, and the compensation should reflect the assumption of the risk of non-payment and delay in payment that may be borne in future applications herein.

### G. The Time Limitations Imposed

This case imposed some time limitations on the Receiver and his professionals due to the necessity for rapid resolutions of issues.

### H. The Experience, Reputation, and Ability of the Professionals

The Receiver and his professionals enjoy a fine reputation and have proven substantial ability in the fields of equity receiverships, litigation, and business reorganization.

### I. The "Undesirability" of the Case

This case is not the least bit undesirable, and the Receiver and his professionals are honored and privileged to serve in this case.

### J. The Nature and Length of Professional Relationship

The Receiver and his professionals have had no prior relationship with the parties in this case prior to the initial related proceeding of the Corporate Monitor Action.

### K. Awards in Similar Cases

The amounts requested by the Receiver and his professionals are not unreasonable in terms of awards in cases of similar magnitude and complexity. The compensation requested by the Receiver and his professionals comports with the mandate of applicable law, which directs that

services be evaluated in light of comparable services performed in other cases in the community. As stated above, the hourly rates requested by the Receiver and his professionals are generally lower than the ordinary and usual hourly rates billed by the Receiver and his professionals to not only their ordinary clients, notwithstanding the risks associated with this case, but also other receivers and their retained firms who bill at higher hourly rates.

### L.      The Source of Payment for the Amounts Sought Hereunder

The amounts for which payment is requested hereunder shall be paid from funds that are held in the Argyle receivership bank account.  However, there are currently *insufficient* funds in that account to pay this Fee Application.  The Receiver requests that this Court still grant this Fee Application, and if and when the Argyle receivership account is funded in the amount of at least the total amount sought in this Fee Application, then the requested payments shall be made from the funds in the Argyle receivership account.

## CONCLUSION

The Receiver respectfully requests that this Court enter the proposed Order, attached as Exhibit H, approving this Fourth Fee Application of payment and reimbursement of the requested fees and costs, and for such other relief that is just and proper.  As stated above, the Receivership Estate does not currently have sufficient funds with which to pay the fees requested in this Fee Application.  The Receiver, therefore, merely seeks an order of entitlement, and the Receiver will pay the amounts sought when the Receivership Estate has sufficient funds within which to do so.

## LOCAL RULE CERTIFICATION

Pursuant to Local Rule 7.1(a)(3), the Receiver hereby certifies that he has conferred with counsel for the SEC and the remaining Defendant regarding this Fee Application. The SEC consents to the relief requested herein.  Defendant Jose Aman states consents to the relief requested herein.

|  |  |
|---|---|
| Dated: November 13, 2020 | Respectfully submitted,<br>**LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP**<br>*Co-Counsel for the Receiver*<br>201 S. Biscayne Blvd., 22nd Floor<br>Miami, FL 33131<br>Tel.: (305) 403-8788<br>Fax: (305) 403-8789<br><br>s/ Stephanie Reed Traband<br>Email:  srt@lklsg.com; ar@lklsg.com<br>Florida Bar No. 0158471<br><br>-and-<br><br>**SALLAH ASTARITA & COX, LLC**<br>*Co-Counsel for the Receiver*<br>3010 North Military Trail, Suite 210<br>Boca Raton, FL 33431<br>Tel.: (561) 989-9080<br>Fax: (561) 989-9020<br>**Patrick J. Rengstl, P.A.**<br>Fla. Bar No. 0581631<br>Email: pjr@sallahlaw.com |

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ Stephanie Reed Traband
STEPHANIE REED TRABAND

**SERVICE LIST**

*Counsel for Securities and Exchange Commission:*
Amie Riggle Berlin, Esq.
Senior Trial Counsel
Linda S. Schmidt, Esq.
Senior Trial Counsel
Securities and Exchange Commission
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Email: berlina@sec.gov

*Counsel for Harold Seigel, Jonathan Seigel, and H.S. Management Group LLC:*
Ellen M. Kaplan, Esq.
Law Office of Ellen M. Kaplan P.A.
9900 W Sample Rd Fl 3
Coral Springs, Florida 33065
Email: ellenkaplanesq@aol.com

*Counsel for Gold 7 of Miami, LLC:*
Aaron Resnick, Esq.
Law Offices of Aaron Resnick, P.A.
100 Biscayne Boulevard, Suite 1607
Miami, Florida 33132
E-mail: aresnick@thefirmmiami.com

*Counsel for Winners Church, Frederick Shipman, and Whitney Shipman:*
Carl Schoeppl, Esq.
Terry A.C. Gray, Esq.
Schoeppl Law, P.A.
4651 North Federal Highway
Boca Raton, Florida 33431
Email: carl@schoeppllaw.com
          tgray@schoeppllaw.com

**_Via Email_**

*Jose Aman, pro se*
E-mail: joseaman123@gmail.com