**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**(Palm Beach Division)**

**Case No. 9:19-CV-80633-ROSENBERG**

SECURITIES AND EXCHANGE COMMISSION,

     Plaintiff,

v.

NATURAL DIAMONDS INVESTMENT CO.,
et al.,

     Defendants,

H.S. MANAGEMENT GROUP LLC, et al.,

     Relief Defendants.

_____/

**RECEIVER'S UNOPPOSED FIFTH INTERIM APPLICATION**
**FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND**
**REIMBURSEMENT OF EXPENSES TO THE RECEIVER AND**
**HIS PROFESSIONALS; INCORPORATED MEMORANDUM OF LAW**

Pursuant to paragraph 52 of Section XIII of the Order Granting Plaintiff Securities and

Exchange Commission's Motion for Appointment of Receiver [DE 20] (the "Appointment

Order"), Jeffrey C. Schneider, not individually, but solely in his capacity as the Court-appointed

receiver (the "Receiver"), submits his Fifth Interim Application for allowance and payment of

compensation and reimbursement of expenses for the quarterly period of October 1, 2020 through

December 31, 2020.

The Receiver has conferred with those that are still parties to this case. The Securities and

Exchange Commission (the "SEC") consents to the relief requested herein. All Defendants and

Relief Defendants (except for Jose Aman) have since settled with the SEC and have had consent

judgments entered by the Court, so they are no longer parties to the case. Mr. Aman has also

consented to a settlement with the SEC, but the terms are in the process of finalization following

his December 8, 2020 sentencing in the criminal case. Because a consent judgment has not yet been entered against Mr. Aman, Receiver consulted with him about this Fee Application, and he advised that he has no objection.

## INTRODUCTION

During the period of time covered by this Fee Application, the Receiver is pleased to report that he physically secured diamonds and jewelry that have been appraised **at approximately $1.1 million**.[1]  These pieces were part of the global settlement with G7 that was approved during this period, and pursuant to the approved settlement agreements, those items will be sold and G7 is entitled to a payment of up to $350,000, with the balance being kept by the Receivership Estate for the benefit of the defrauded victims.

In addition, during the subject quarter, the Receiver, among other things, further investigated and prepared to make a demand against certain non-parties that worked with the Corporate Defendants.  The Receiver also worked to secure documents from the Seigels.  Lastly, the Receiver worked with the SEC to lay the groundwork for consent final judgments against the Corporate Defendants.

The specific details of the work of the Receiver and his professionals is described in more detail below.

## PROCEDURAL BACKGROUND

On May 13, 2019, the SEC filed an emergency action in this Court to enjoin NDIC, EFDG (a/k/a Diamante Atelier), and Argyle (collectively, the "Corporate Defendants"), and their principals.  In the Complaint [DE 1], the SEC alleged that the Corporate Defendants were a three-tiered Ponzi scheme that promised hundreds of investors investment returns that ranged from 24%

---

[1] This sum includes the values of diamonds that the Court has determined are owned by others and will thus not be sold for the benefit of the Receivership Estate.

to 100% every year to two years for signing investment contracts supposedly backed by diamonds worth tens of millions of dollars.  The Corporate Defendants raised approximately $30 million from approximately 300 investors from late 2013 through 2018.

The SEC also filed a Motion for Temporary Restraining Order, Asset Freeze, and Other Relief [DE 4] and a Motion for Appointment of Receiver [DE 7].  The SEC advised this Court that Mr. Schneider had been appointed as Corporate Monitor for NDIC and EFDG in the Corporate Monitor Action, which was then also pending in the Southern District of Florida.  This Court appointed the Receiver for Argyle, which was later expanded to include NDIC and EFDG.

There were asset freezes over Defendants Aman, Harold Seigel and Seigel entity HS Management (a relief defendant) [DE 40].  In addition, there were asset freezes over the other relief defendants, including approximately $2 million frozen in accounts in the names of Relief Defendants Winners Church International Inc. of West Palm Beach Florida ("Winners Church") and Fredrick and Whitney Shipman (collectively, the "Shipmans") [DE 59], and dozens of diamonds and jewelry pieces held by Relief Defendant G7 [DE 55].  As discussed below, the SEC settled its claims against Winners Church and the Shipmans, so the approximately $2 million that was frozen was deposited into the Court's registry and will, upon Court approval, be transferred to the Receiver to distribute, again upon Court approval, to the victims.  Also, as discussed below, a settlement was reached at mediation between the SEC, G7, and the Receiver, and which the Court later approved [DE 251, DE 252].

## DETAILS OF ACTIVITIES ACCOMPLISHED

As more fully discussed in the Receiver's six Reports [DE 111-1, DE 144-1, DE 185-1, DE 199-1, DE 230-1, and DE 262, respectively], the Receiver has accomplished much since his appointment for the benefit of the Receivership Estate and investors.  We will not reiterate them

here, but instead, we will focus solely on the accomplishments during this period, which include

the following:

i.      Working with G7 to finalize the settlement papers, and filing a motion
        to approve the G7 settlement agreement [DE 252], which the Court
        approved [DE 259];

ii.     Working to retain an auction company and organize the framework of
        an auction of the various diamonds secured by the Receiver to monetize
        the Receivership Estate;

iii.    Moving to determine the ownership of certain diamonds caught up in
        the Receivership [DE 264], which the Court determined were not part
        of the Receivership Estate [DE 271], and working to facilitate the return
        of those diamonds to their rightful owners;

iv.     Working with the Court-appointed accountants to finalize the necessary
        tax returns for this matter;

v.      Securing orders by the magistrate and this Court to require Harold
        Seigel and HS to account to the Receiver on various financial issues and
        pursuing the production of that Court-ordered production;

vi.      Continuing to communicate and update investors and other victims by
        email, by telephone, and through the receivership website about the
        status of this proceeding.  The receivership website contains important
        court filings, letters from the Receiver to the investors, a registration
        form, a "frequently asked questions" section to educate the investors
        about the receivership process, and an email address
        (naturaldiamondsreceivership@lklsg.com) and phone number
        (786.347.2563), so the investors may contact the Receiver directly with
        questions that were not answered by navigating the website;

vii.    Investigating potential targets for purposes of ancillary receivership
        litigation for the benefit of the Receivership Estate and investors;

viii.   Pursuing subpoenas and certain pre-suit demand letters; and

ix.     Working with the SEC on language for consent final judgments against
        the Corporate Defendants, which will be submitted to the Court for entry
        when finalized.

        The Receiver respectfully requests that this Court appreciate the difficulty, challenge, and

magnitude of the tasks that he and his professionals have been confronted with and the time-

pressure under which they were obligated to perform those tasks, neither of which can be gleaned from an after-the-fact review of the attached time records.  This case was, and continues to be, challenging because of the complexity of the business operations involved, the volume of documents and data, the difficulty in obtaining information and documentation from the principals of the Corporate Defendants, and the voluminous financial transactions from the relevant business and personal accounts.  Again, the Receiver's six Reports detail many of the Receiver's and his professionals' immediate accomplishments.

The Receiver also respectfully requests that this Court appreciate the large amount of risk undertaken by the Receiver and his team because there was no guaranty upon the Receiver's appointment that there would be any assets ultimately secured to compensate the Receiver or his team.  In fact, there are still *insufficient* funds in Argyle's receivership bank account to pay this Fee Application or any of the previously-awarded four Fee Applications, although the Receiver has filed a motion to transfer funds from the Court registry to the Receivership estate, now that all the conditions precedent have been met.

<u>DESCRIPTION OF SERVICES</u>

I.      **The Receiver**

The Receiver is a trial attorney who has served as a District Court receiver and receiver's counsel in numerous SEC, FTC, and Commodity Futures Trading Commission cases during his nearly 30-year career.  The Receiver is Chair of his law firm's Receivership Practice Group and has served as the firm's Managing Partner since the firm's inception.  Because the Receiver views receivership cases as serving the public's interest, the Receiver agreed to substantially reduce his standard hourly rate of $695.00 per hour, which is what the Receiver charges his typical commercial clients, to $395.00 per hour for purposes of this case.  The Receiver's $395.00 hourly

rate is currently one of the lower receiver rates in the Southern District of Florida in receivership cases. The Receiver also capped his rate during the life of this case.

The Receiver also sought commensurate reductions from all of his professionals. The Receiver also obtained their agreement to cap their rates during the life of this case.

## II.     Information about this Fee Application

This Application has been prepared in accordance with the SEC's Billing Instructions for Receivers in Civil Actions Commenced by the SEC. Pursuant to the Billing Instructions, Exhibit A attached hereto is a Certification by the Receiver confirming, under oath, that this Fee Application complies with the SEC's Billing Instructions.

Exhibit B attached hereto is the updated quarterly Standardized Fund Accounting Report, also known as the SFAR, which is the SEC's accounting form required in civil receivership actions commenced by the SEC.

Exhibit C attached hereto memorializes the professional services rendered by the Receiver, and the necessary and reasonable non-reimbursed out-of-pocket costs attendant to those services. Exhibit C, which was prepared based on the Receiver's contemporaneous daily time records, includes a daily description of the services rendered by the Receiver, along with the hours expended at his reduced hourly rate. Exhibit C reflects that the Receiver billed a total of 54.80 hours, at a reduced hourly rate of $395.00 per hour, for a total of $21,646.00.

Exhibits D, E, and F attached hereto memorialize the professional services rendered by the Receiver's professionals, and the necessary and reasonable non-reimbursed out-of-pocket costs attendant to their services, which are described more fully below.

Exhibit G is a proposed Order granting this Fee Application.

### III.    The Receiver's Counsel and Their Services

Pursuant to paragraph 50 of Section XIII of the Appointment Order, the Receiver was required to obtain permission from this Court to retain his legal counsel.  The Court approved the retention of the law firms of Sallah Astarita & Cox, LLC (the "Sallah Firm"),  Silver Law Group (the "Silver Firm")), and the Receiver's law firm Levine Kellogg Lehman Schneider + Grossman LLP ("LKLSG").  Quite experienced in receivership matters, the partners and of counsel at the Sallah and Silver Firms have all agreed to substantially reduce their standard hourly rates (which range from $400.00 to $650.00 per hour) to $395.00 per hour in order to further increase potential recoveries for the benefit of the Receivership Estate.  Associates are billed at less than that maximum reduced rate.  They have also agreed to cap their rates during the life of this case.

LKLSG, which handles all issues relating to the Seigels and Relief Defendant HS Management, similarly agreed to rate reductions and an even smaller cap of $350.00 during the life of this case.  The Receiver continues to endeavor to prevent duplication of efforts by his attorneys.

The professional services rendered by the Sallah Firm, and the necessary and reasonable non-reimbursed out-of-pocket costs attendant to those services, are described in more detail on Exhibit D.  Exhibit D, which was prepared based on the Sallah Firm's contemporaneous daily time records, includes a daily description of the services rendered, the hours expended, and the attorney's reduced hourly rate.[2]  Exhibit D reflects that the Sallah Firm has charged a total of 38.60 hours for a total of $15,247.00 and incurred costs of $205.00 during the subject period, bringing the current total due the Sallah Firm to $15,452.00.

As stated above, the professional services rendered by LKLSG, and the necessary and

---

[2]  Counsels' billing entries in Exhibits D and E consist of "Case Administration" and "Asset Analysis and Recovery" entries pursuant to the SEC's Billing Instructions.

reasonable non-reimbursed out-of-pocket costs attendant to those services, are described in more detail on Exhibit E.  Exhibit E was prepared based on LKLSG's contemporaneous daily time records, and includes a daily description of the services rendered, the hours expended, and the attorney's reduced hourly rate.  Stephanie Reed Traband billed a total of 83.40 hours, at a reduced hourly rate of $350.00 per hour, for a total of $29,190.00.  The Receiver's paralegal billed a total of 19.30 hours, at a reduced hourly rate of $150.00 per hour, for a total of $2,895.  Exhibit E also reflects that the Receiver's firm incurred costs of $63.55 during the subject period.[3]

The schedules of disbursements for expenses, which are also part of Exhibits D and E, are those actual and necessary expense items, such as photocopy charges, long distance telephone charges, telecopy charges, delivery charges, and various expenses incurred in connection with this matter.  All of these expense items would typically be billed by the Receiver and his professionals to their general commercial clients.  In addition, all travel time was reduced by 50% in accordance with the SEC's Billing Instructions.

As set forth above, the Receiver and his professionals have <u>not</u> been paid *any* compensation in connection with the services and expenses set forth herein, and do not expect to be paid for those services until the Receivership has sufficient resources with which to make those payments.

### IV.     Summary Chart

For the Court's convenience, the following is a summary of the total fees and costs of the Receiver and his professionals during the subject period covered by this Fee Application:

| Name | Hours | Fees | Expenses | Total |
|------|-------|------|----------|-------|
| Receiver | 54.80 | $ 21,646.00 | $0 | $21,646.00 |
| Sallah Astarita Cox LLC | 38.60 | $15,247.00 | $205.00 | $15,452.00 |

---

[3]  The Silver Firm did not have any billable time or expenses during the subject period.

| | | | |
|---|---|---|---|
| Levine Kellogg Lehman Schneider + Grossman LLP | 102.7 | $32,085.00 | $63.55 | $32,148.55 |
| **Total** | 196.1 | **$68,978.00** | **$268.55** | **$69,246.55** |

## V.      Applicable Legal Standard and Analysis

In determining attorneys' fees, a court must (1) determine the nature and extent of the services rendered; (2) determine the value of those services; and (3) consider the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F. 2d. 714 (5th Cir. 1974).  *See Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 877-78 (11th Cir. 1990) (bankruptcy fee award case addressing the issue of attorney's fees generally before considering specific requirements in the bankruptcy context).  The twelve factors set forth in *Johnson*, a case involving an award of attorneys' fees under Federal civil rights statutes, as incorporated by the Eleventh Circuit in *Grant*, a bankruptcy case, are:  (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or by the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

### A.      The Time and Labor Required

The foregoing summary description, together with the time records attached hereto, detail the time, nature, and extent of the professional services rendered by the Receiver and his professionals during the period covered by this Application.  The Receiver and his professionals believe that the time spent is justified by the results that have been achieved thus far.  The Receiver

and his professionals believe they have played a significant role during the course of this proceeding and will continue to do so in the future.

**B.      The Novelty and Difficulty of the Questions Presented**

This case required a high level of skill to secure receivership assets and to carry out the Receiver's many duties.

**C.      The Skill Requisite to Perform the Services Properly**

In order to perform the required services, substantial legal skill and experience in the areas of commercial law and litigation were required of the Receiver and his professionals.  The Receiver is acutely aware of the financial considerations arising in receiverships such as this.  Accordingly, as this Court may gather from the Exhibits attached hereto, the Receiver has staffed the administration of this case efficiently under the direction and immediate supervision of the Receiver.

**D.      The Preclusion of Other Employment Due to This Case**

Although the Receiver and his professionals were not explicitly precluded as a result of this case from accepting other matters, matters in this case were treated by the Receiver and his professionals in an expeditious and professional manner.  Also, this case required the Receiver and his professionals to devote a significant amount of time to this case, to the preclusion of expending time on other active matters.

**E.      The Customary Fee**

The hourly rates of the Receiver and his professionals set forth on the attached exhibits reflect a rate that is generally lower than the hourly rates billed by the Receiver and his professionals to clients in other cases, as well as rates that are consistent with or even lower than other receivers and their retained law firms in similar matters.   The Receiver's and his

professionals' reduced rates have been confirmed and approved in many other matters in which the Receiver and his professionals have been involved.

**F.      Whether the Fee Is Fixed or Contingent**

The compensation of the Receiver and his professionals is subject to the approval of this Court, and the Receiver and his professionals have not received any compensation for their services rendered to date.  The above factors should be taken into consideration by this Court, and the compensation should reflect the assumption of the risk of non-payment and delay in payment that may be borne in future applications herein.

**G.      The Time Limitations Imposed**

This case imposed some time limitations on the Receiver and his professionals due to the necessity for rapid resolutions of issues.

**H.      The Experience, Reputation, and Ability of the Professionals**

The Receiver and his professionals enjoy a fine reputation and have proven substantial ability in the fields of equity receiverships, litigation, and business reorganization.

**I.      The "Undesirability" of the Case**

This case is not the least bit undesirable, and the Receiver and his professionals are honored and privileged to serve in this case.

**J.      The Nature and Length of Professional Relationship**

The Receiver and his professionals have had no prior relationship with the parties in this case prior to the initial related proceeding of the Corporate Monitor Action.

**K.      Awards in Similar Cases**

The amounts requested by the Receiver and his professionals are not unreasonable in terms of awards in cases of similar magnitude and complexity.  The compensation requested by the Receiver and his professionals comports with the mandate of applicable law, which directs that

services be evaluated in light of comparable services performed in other cases in the community. As stated above, the hourly rates requested by the Receiver and his professionals are generally lower than the ordinary and usual hourly rates billed by the Receiver and his professionals to not only their ordinary clients, notwithstanding the risks associated with this case, but also other receivers and their retained firms who bill at higher hourly rates.

> **L.      The Source of Payment for the Amounts Sought Hereunder**

The amounts for which payment is requested hereunder shall be paid from funds that are held in the Argyle receivership bank account.  However, there are currently *insufficient* funds in that account to pay this Fee Application.  The Receiver requests that this Court still grant this Fee Application, and if and when the Argyle receivership account is funded in the amount of at least the total amount sought in this Fee Application, then the requested payments shall be made from the funds in the Argyle receivership account.

## CONCLUSION

The Receiver respectfully requests that this Court enter the proposed Order, attached as Exhibit G, approving this Fifth Fee Application of payment and reimbursement of the requested fees and costs, and for such other relief that is just and proper.  As stated above, the Receivership Estate does not currently have sufficient funds with which to pay the fees requested in this Fee Application.  The Receiver, therefore, merely seeks an order of entitlement, and the Receiver will pay the amounts sought when the Receivership Estate has sufficient funds within which to do so.

## <u>LOCAL RULE CERTIFICATION</u>

Pursuant to Local Rule 7.1(a)(3), the Receiver hereby certifies that he has conferred with counsel for the SEC and the remaining Defendant regarding this Fee Application. The SEC consents to the relief requested herein. Defendant Jose Aman states he has no objection.

Dated: February 16, 2021

Respectfully submitted,
**LEVINE KELLOGG LEHMAN**
**SCHNEIDER + GROSSMAN LLP**
*Co-Counsel for the Receiver*
201 S. Biscayne Blvd., 22nd Floor
Miami, FL 33131
Tel.: (305) 403-8788
Fax: (305) 403-8789

<u>s/ Stephanie Reed Traband</u>
Email:  srt@lklsg.com; ar@lklsg.com
Florida Bar No. 0158471

-and-

**SALLAH ASTARITA & COX, LLC**
*Co-Counsel for the Receiver*
3010 North Military Trail, Suite 210
Boca Raton, FL 33431
Tel.: (561) 989-9080
Fax: (561) 989-9020
**Patrick J. Rengstl, P.A.**
Fla. Bar No. 0581631
Email: pjr@sallahlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 16, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: <u>/s/ Stephanie Reed Traband</u>
STEPHANIE REED TRABAND

14

## **SERVICE LIST**

*Counsel for Securities and Exchange Commission:*
Amie Riggle Berlin, Esq.
Senior Trial Counsel
Linda S. Schmidt, Esq.
Senior Trial Counsel
Securities and Exchange Commission
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Email: berlina@sec.gov

*Counsel for Harold Seigel, Jonathan Seigel, and H.S. Management Group LLC:*
Ellen M. Kaplan, Esq.
Law Office of Ellen M. Kaplan P.A.
9900 W Sample Rd Fl 3
Coral Springs, Florida 33065
Email: ellenkaplanesq@aol.com

*Counsel for Gold 7 of Miami, LLC:*
Aaron Resnick, Esq.
Law Offices of Aaron Resnick, P.A.
100 Biscayne Boulevard, Suite 1607
Miami, Florida 33132
E-mail: aresnick@thefirmmiami.com

*Counsel for Winners Church, Frederick Shipman, and Whitney Shipman:*
Carl Schoeppl, Esq.
Terry A.C. Gray, Esq.
Schoeppl Law, P.A.
4651 North Federal Highway
Boca Raton, Florida 33431
Email: carl@schoepllaw.com
        tgray@schoepllaw.com

***Via Email***

*Jose Aman, pro se*
E-mail: joseaman123@gmail.com