**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**(Palm Beach Division)**

**Case No. 9:19-CV-80633-ROSENBERG**

SECURITIES AND EXCHANGE COMMISSION,

     Plaintiff,

v.

NATURAL DIAMONDS INVESTMENT CO.,
et al.,

     Defendants,

H.S. MANAGEMENT GROUP LLC, et al.,

     Relief Defendants.
_____/

**RECEIVER'S UNOPPOSED SEVENTH INTERIM APPLICATION**
**FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND**
**REIMBURSEMENT OF EXPENSES TO THE RECEIVER AND**
**HIS PROFESSIONALS; INCORPORATED MEMORANDUM OF LAW**

Pursuant to paragraph 52 of Section XIII of the Order Granting Plaintiff Securities and Exchange Commission's Motion for Appointment of Receiver [DE 20] (the "Appointment Order"), Jeffrey C. Schneider, not individually, but solely in his capacity as the Court-appointed receiver (the "Receiver")for Natural Diamonds Investment Co ("NDIC"), Eagle Financial Diamond Group ("EFDG"), and Argyle Coin, LLC ("Argyle"), submits his Seventh Interim Application for allowance and payment of compensation and reimbursement of expenses for the quarterly period of April 1, 2021 through June 30, 2021.

The Receiver has conferred with those that are still parties to this case. The Securities and Exchange Commission (the "SEC") consents to the relief requested herein. All Defendants and Relief Defendants have since settled with the SEC and have had consent judgments entered by the Court, so they are no longer parties to the case.

## **INTRODUCTION**

As previously reported, the Receiver discovered that a former professional of NDIC and EFDG testified that he knew they operated as a Ponzi scheme.  This particular professional has a $1 million insurance policy.  As a result, the Receiver previously made a demand on this professional for the entire insurance policy to be tendered, and after extended negotiations with that professional during the subject quarter, the Receiver reached a six-figure agreement with that professional.

On July 6, 2021, the Receiver moved to approve the settlement  with EFDG's and NDIC's pre-receivership accounting firm (the "Accountant"); and (ii) the settlement's material terms, including the **$750,000** settlement payment by the Accountant [DE 297].  The Court promptly granted the motion [DE 298], and the settlement will be funded in accordance with the timing set forth in the settlement agreement.

In addition, during the subject quarter, the Receiver moved to establish a claims procedure, which the Court granted [DE 293, 296].  The Court has approved a process by which the Receiver will be assessing claims on a "net loss" basis, which is also known as the "net in-net out" basis. Because the Receivership Entities operated as a Ponzi scheme, it is important to remember that there was no meaningful source of income generation, so there is no money to pay promised returns to investors.  Instead, the Court has approved a process that will only be recognizing the "net" amount of money investors or creditors are owed from the Receivership Entities, which is computed by subtracting any amounts that they received from the Receivership Entities – regardless of whether they received those amounts as interest or principal – from any amounts they sent to the Receivership Entities. Stated differently, claim amounts will be based on money investors sent to the Receivership Entities less money or property they received back from the Receivership Entities.

On June 28, 2021, the Receiver sent the claim form, along with an explanatory letter from the Receiver, to known potential claimants.  The letter and claim form are also posted on the receivership website.  Additionally, although not required by the order, the Receiver also emailed copies of the claim form and letter to all available claimant email addresses.  In the letter, the Receiver instructed potential claimants that if they believe they have suffered economic damages due to the activities of the Receivership Entities, they must complete and submit the proof of claim form to us by no later than September 30, 2021, in order to be considered eligible to receive distributions. The claim forms, and questions related thereto, have been steadily coming in to the Receiver's office since the mailing.

Finally, and as previously reported, there are a few individuals that sent diamonds or other pieces of jewelry to the Receivership Entities for safekeeping, re-certification, or to be sold.  The Receiver asked such persons to complete the claim form and provide us with as much information as they can about those pieces (including GIA numbers and any other descriptions) and the circumstances under which they were sent to the Receivership Entities.

The Receiver's intention remains to conclude the claims proceeding as soon as possible with as little claims litigation as possible and ultimately repay as many legitimate investor and creditor claims with available receivership funds as soon as practicable.

The specific details of the work of the Receiver and his professionals are described in more detail below and in the attached time sheets.

**PROCEDURAL BACKGROUND**

On May 13, 2019, the SEC filed an emergency action in this Court to enjoin NDIC, EFDG (a/k/a Diamante Atelier), and Argyle (collectively, the "Corporate Defendants"), and their principals.  In the Complaint [DE 1], the SEC alleged that the Corporate Defendants were a three-tiered Ponzi scheme that promised hundreds of investors investment returns that ranged from 24%

3

to 100% every year to two years for signing investment contracts supposedly backed by diamonds worth tens of millions of dollars.  The Corporate Defendants raised approximately $30 million from approximately 300 investors from late 2013 through 2018.

The SEC also filed a Motion for Temporary Restraining Order, Asset Freeze, and Other Relief [DE 4] and a Motion for Appointment of Receiver [DE 7].  The SEC advised this Court that Mr. Schneider had been appointed as Corporate Monitor for NDIC and EFDG in the Corporate Monitor Action, which was then also pending in the Southern District of Florida.  This Court appointed the Receiver for Argyle, which was later expanded to include NDIC and EFDG.

Since his appointment, the Receiver and his professionals have been working diligently to effectuate their obligations under the Appointment Order.  The Receiver has been appointed to serve as receiver in numerous cases involving the SEC, the Federal Trade Commission ("FTC"), the Commodity Futures Trading Commission, and various Attorneys General during his nearly 30-year career.  The Receiver has also served as counsel, or special counsel, to various receivers in SEC and FTC cases.  The Receiver has helped to recover approximately $300 million for defrauded investors during the course of his career.  He considers it an honor and a privilege to serve in this capacity.

Throughout this process, the Receiver and his professionals have worked cooperatively with the SEC and other agencies, with each side mindful of their respective responsibilities and duties.  The coordination of the Receiver's and the SEC's efforts has resulted in several immediate accomplishments (further discussed below) for the benefit of the Receivership Estate and, most importantly, victimized investors.

## DETAILS OF ACTIVITIES ACCOMPLISHED

As more fully discussed in the Receiver's nine Reports [DE 111-1, DE 144-1, DE 185-1, DE 199-1, DE 230-1, DE 262, DE 275, DE 292, and DE 302, respectively], the Receiver has

accomplished much since his appointment for the benefit of the Receivership Estate and investors. We will not reiterate them all here, but instead, we will focus solely on the accomplishments during this period, which include the following:

i.  Finalizing the $750,000 settlement with the Accountant to be approved by the Court;

ii.  Moving to establish a claims procedure and mailing claim forms to potential claimants;

iii.  Continuing to work to retain an auction company and organize the framework of an auction of the various diamonds and jewelry pieces secured by the Receiver to monetize the Receivership Estate;

iv.  Communicating with owners of diamonds determined not to be part of the Receivership, to determine how and when to return those diamonds to their rightful owners or otherwise assist those owners;

v.  After securing orders by the magistrate and this Court to require Harold Seigel and HS Management to account to the Receiver on various financial issues, continuing to pursue the production of that Court-ordered production; and

vi.  Continuing to communicate and update investors and other victims by email, by telephone, and through the receivership website about the status of this proceeding.  Since the claims procedure was implemented, the Receiver and his professionals have fielded numerous calls and emails from potential claimants.

The Receiver respectfully requests that this Court appreciate the difficulty, challenge, and magnitude of the tasks that he and his professionals have been confronted with and the time-pressure under which they were obligated to perform those tasks, neither of which can be gleaned from an after-the-fact review of the attached time records.  This case was, and continues to be, challenging because of the complexity of the business operations involved, the volume of documents and data, and the voluminous financial transactions from the relevant business and personal accounts.  Again, the Receiver's nine Reports detail many of the Receiver's and his professionals' immediate accomplishments.

The Receiver also respectfully requests that this Court appreciate the large amount of risk undertaken by the Receiver and his team because there was no guaranty upon the Receiver's appointment that there would be any assets ultimately secured to compensate the Receiver or his team.  In fact, given the Court-approved transfer of approximately $2 million from the Court's registry earlier this year, the Receiver and his professionals were then paid their collective fees and reimbursed their collective expenses from the five prior separate Court-approved fee applications that had been outstanding, and thus unpaid, from the start of this case for more than 18 months.

## DESCRIPTION OF SERVICES

### I.      The Receiver

The Receiver is a trial attorney who has served as a District Court receiver and receiver's counsel in numerous SEC, FTC, and Commodity Futures Trading Commission cases during his nearly 30-year career.  The Receiver is Chair of his law firm's Receivership Practice Group and has served as the firm's Managing Partner since the firm's inception.  Because the Receiver views receivership cases as serving the public's interest, the Receiver agreed to substantially reduce his standard hourly rate of $695.00 per hour, which is what the Receiver charges his typical commercial clients, to $395.00 per hour for purposes of this case.  The Receiver's $395.00 hourly rate is currently one of the lower receiver rates in the Southern District of Florida in receivership cases.  The Receiver also capped his rate during the life of this case.

The Receiver also sought commensurate reductions from all of his professionals.  The Receiver also obtained their agreement to cap their rates during the life of this case.

### II.      Information about this Fee Application

This Application has been prepared in accordance with the SEC's Billing Instructions for Receivers in Civil Actions Commenced by the SEC.  Pursuant to the Billing Instructions, Exhibit

A attached hereto is a Certification by the Receiver confirming, under oath, that this Fee Application complies with the SEC's Billing Instructions.

Exhibit B attached hereto is the updated quarterly Standardized Fund Accounting Report, also known as the SFAR, which is the SEC's accounting form required in civil receivership actions commenced by the SEC.

Exhibit C attached hereto memorializes the professional services rendered by the Receiver, and the necessary and reasonable non-reimbursed out-of-pocket costs attendant to those services.  Exhibit C, which was prepared based on the Receiver's contemporaneous daily time records, includes a daily description of the services rendered by the Receiver, along with the hours expended at his reduced hourly rate.  Exhibit C reflects that the Receiver billed a total of 17.3 hours, at a reduced hourly rate of $395.00 per hour, for a total of $6,833.50.

Exhibits D and E attached hereto memorialize the professional services rendered by the Receiver's professionals, and the necessary and reasonable non-reimbursed out-of-pocket costs attendant to their services, which are described more fully below.

Exhibit F is a proposed Order granting this Fee Application.

### III.    The Receiver's Counsel and Their Services

Pursuant to paragraph 50 of Section XIII of the Appointment Order, the Receiver was required to obtain permission from this Court to retain his legal counsel.  On July 10, 2019, the Receiver filed his Motion to Employ Legal Counsel (the law firms of Sallah Astarita & Cox, LLC (the "Sallah Firm") and Silver Law Group (the "Silver Firm")), which was resolved by agreed order [DE 126]. The Sallah and Silver Firms have dozens of years of receivership experience and have served as receivers or lead counsel to receivers in countless receiverships involving Ponzi schemes, investment fraud schemes, deceptive telemarketing schemes, and the like in the Southern District of Florida and elsewhere around the Country.  Like the Receiver, the partners and of counsel at the Sallah and Silver Firms have all agreed to substantially reduce their standard hourly

rates (which range from $400.00 to $650.00 per hour) to $395.00 per hour in order to further increase potential recoveries for the benefit of the Receivership Estate. Associates are billed at less than that maximum reduced rate. They have also agreed to cap their rates during the life of this case.

The Receiver's firm (Levine Kellogg Lehman Schneider + Grossman LLP), which handles all issues relating to the Seigels and Relief Defendant HS Management, have agreed to similar reductions and a cap of $350.00 during the life of this case. The Receiver has endeavored to prevent duplication of efforts by his attorneys.

The professional services rendered by the Sallah Firm, and the necessary and reasonable non-reimbursed out-of-pocket costs attendant to those services, are described in more detail on Exhibit D. Exhibit D, which was prepared based on the Sallah Firm's contemporaneous daily time records, includes a daily description of the services rendered, the hours expended, and the attorney's reduced hourly rate.[1] Exhibit D reflects that the Sallah Firm has charged a total of 8.10 hours for a total of $3,199.50.

As stated above, the professional services rendered by the Receiver's firm, and the necessary and reasonable non-reimbursed out-of-pocket costs attendant to those services, are described in more detail on Exhibit E. Exhibit E was prepared based on the Receiver's firm's contemporaneous daily time records, and includes a daily description of the services rendered, the hours expended, and the attorney's reduced hourly rate. The Receiver's partner, Stephanie Reed Traband, who serves as co-counsel, billed a total of 97.6 hours, at a reduced hourly rate of $350.00 per hour, for a total of $34,160. Finally, the Receiver's paralegal billed a total of 13.7 hours, at a reduced hourly rate of $150.00 per hour, for a total of $2,055. Exhibit E also reflects that the

---

[1] Counsels' billing entries in Exhibits D and E consist of "Case Administration" and "Asset Analysis and Recovery" entries pursuant to the SEC's Billing Instructions.

Receiver's firm incurred costs of $3,142.92 during the subject period.[2]

      The schedules of disbursements for expenses, which are also part of the attached Exhibits, are those actual and necessary expense items, such as photocopy charges, long distance telephone charges, telecopy charges, delivery charges, and various expenses incurred in connection with this matter. All of these expense items would typically be billed by the Receiver and his professionals to their general commercial clients. In addition, all travel time was reduced by 50% in accordance with the SEC's Billing Instructions.

### IV.    Summary Chart

      For the Court's convenience, the following is a summary of the total fees and costs of the Receiver and his professionals during the subject period covered by this Fee Application:

| Name | Hours | Fees | Expenses | Total |
|---|---|---|---|---|
| Receiver | 17.30 | $6,833.50 | $0 | $6,833.50 |
| Sallah Astarita Cox LLC | 8.10 | $3,199.50 | $0 | $3,199.50 |
| Levine Kellogg Lehman Schneider + Grossman LLP | 111.30 | $36,215.00 | $3,142.92 | $39,361.62 |
| **Total** | **136.7** | **$46,248.00** | **$3,142.92** | **$ 49,390.92** |

### V.    Applicable Legal Standard and Analysis

      In determining attorneys' fees, a court must (1) determine the nature and extent of the services rendered; (2) determine the value of those services; and (3) consider the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F. 2d. 714 (5th Cir. 1974). *See Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 877-78 (11th Cir. 1990) (bankruptcy fee award case addressing the issue of attorney's fees generally before considering specific requirements in the

---

[2]  The Silver Firm did not have any billable time or expenses during the subject period.

bankruptcy context).   The twelve factors set forth in *Johnson*, a case involving an award of attorneys' fees under Federal civil rights statutes, as incorporated by the Eleventh Circuit in *Grant*, a bankruptcy case, are:   (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or by the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

### A.      The Time and Labor Required

The foregoing summary description, together with the time records attached hereto, detail the time, nature, and extent of the professional services rendered by the Receiver and his professionals during the period covered by this Application.   The Receiver and his professionals believe that the time spent is justified by the results that have been achieved thus far.   The Receiver and his professionals believe they have played a significant role during the course of this proceeding and will continue to do so in the future.

### B.      The Novelty and Difficulty of the Questions Presented

This case required a high level of skill to secure receivership assets and to carry out the Receiver's many duties.

### C.      The Skill Requisite to Perform the Services Properly

In order to perform the required services, substantial legal skill and experience in the areas of commercial law and litigation were required of the Receiver and his professionals.   The Receiver is acutely aware of the financial considerations arising in receiverships such as this.   Accordingly, as this Court may gather from the Exhibits attached hereto, the Receiver has staffed the

administration of this case efficiently under the direction and immediate supervision of the Receiver.

### D.      The Preclusion of Other Employment Due to This Case

Although the Receiver and his professionals were not explicitly precluded as a result of this case from accepting other matters, matters in this case were treated by the Receiver and his professionals in an expeditious and professional manner.  Also, this case required the Receiver and his professionals to devote a significant amount of time to this case, to the preclusion of expending time on other active matters.

### E.      The Customary Fee

The hourly rates of the Receiver and his professionals set forth on the attached exhibits reflect a rate that is generally lower than the hourly rates billed by the Receiver and his professionals to clients in other cases, as well as rates that are consistent with or even lower than other receivers and their retained law firms in similar matters.   The Receiver's and his professionals' reduced rates have been confirmed and approved in many other matters in which the Receiver and his professionals have been involved.

### F.      Whether the Fee Is Fixed or Contingent

The compensation of the Receiver and his professionals is subject to the approval of this Court, and the Receiver and his professionals did not receive any compensation for their services for more than 18 months because there were insufficient funds in the receivership accounts during that time.   The above factors should be taken into consideration by this Court, and the compensation should reflect the assumption of the risk of non-payment and delay in payment.

### G.      The Time Limitations Imposed

This case imposed some time limitations on the Receiver and his professionals due to the necessity for rapid resolutions of issues.

### H.   The Experience, Reputation, and Ability of the Professionals

The Receiver and his professionals enjoy a fine reputation and have proven substantial ability in the fields of equity receiverships, litigation, and business reorganization.

### I.   The "Undesirability" of the Case

This case is not the least bit undesirable, and the Receiver and his professionals are honored and privileged to serve in this case.

### J.   The Nature and Length of Professional Relationship

The Receiver and his professionals have had no prior relationship with the parties in this case prior to the initial related proceeding of the Corporate Monitor Action.

### K.   Awards in Similar Cases

The amounts requested by the Receiver and his professionals are not unreasonable in terms of awards in cases of similar magnitude and complexity.  The compensation requested by the Receiver and his professionals comports with the mandate of applicable law, which directs that services be evaluated in light of comparable services performed in other cases in the community. As stated above, the hourly rates requested by the Receiver and his professionals are generally lower than the ordinary and usual hourly rates billed by the Receiver and his professionals to not only their ordinary clients, notwithstanding the risks associated with this case, but also other receivers and their retained firms who bill at higher hourly rates.

### L.   The Source of Payment for the Amounts Sought Hereunder

The amounts for which payment is requested hereunder shall be paid from funds that are held in the Argyle receivership bank account.  The Argyle receivership account was previously funded with the approximate $2 million in settlement monies from Relief Defendants Winners Church/the Shipmans and has been further funded with the Froehlich $750,000 settlement funds. The Argyle receivership account will be further funded once the Receiver sells the many diamonds

and pieces of jewelry he has secured in this proceeding.

## CONCLUSION

The Receiver respectfully requests that this Court enter the proposed Order, attached as Exhibit F, approving this Seventh Fee Application of payment and reimbursement of the requested fees and costs, and for such other relief that is just and proper.

## LOCAL RULE CERTIFICATION

Pursuant to Local Rule 7.1(a)(3), the Receiver hereby certifies that he has conferred with counsel for the SEC.  The SEC consents to the relief requested herein.


Dated: August 16, 2021

Respectfully submitted,
**LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP**
*Co-Counsel for the Receiver*
201 S. Biscayne Blvd., 22nd Floor
Miami, FL 33131
Tel.: (305) 403-8788
Fax: (305) 403-8789

s/ Stephanie Reed Traband
Email:  srt@lklsg.com; ar@lklsg.com
Florida Bar No. 0158471

-and-

**SALLAH ASTARITA & COX, LLC**
*Co-Counsel for the Receiver*
3010 North Military Trail, Suite 210
Boca Raton, FL 33431
Tel.: (561) 989-9080
Fax: (561) 989-9020
**Patrick J. Rengstl, P.A.**
Fla. Bar No. 0581631
Email: pjr@sallahlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ Stephanie Reed Traband
STEPHANIE REED TRABAND

## SERVICE LIST

*Counsel for Securities and Exchange Commission:*
Amie Riggle Berlin, Esq.
Linda S. Schmidt, Esq.
Securities and Exchange Commission
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Email: berlina@sec.gov

*Counsel for Harold Seigel, Jonathan Seigel, and H.S. Management Group LLC:*
Ellen M. Kaplan, Esq.
Law Office of Ellen M. Kaplan P.A.
9900 W Sample Rd Fl 3
Coral Springs, Florida 33065
Email: ellenkaplanesq@aol.com

*Counsel for Gold 7 of Miami, LLC:*
Aaron Resnick, Esq.
Law Offices of Aaron Resnick, P.A.
100 Biscayne Boulevard, Suite 1607
Miami, Florida 33132
E-mail: aresnick@thefirmmiami.com

*Counsel for Winners Church, Frederick Shipman, and Whitney Shipman:*
Carl Schoeppl, Esq.
Terry A.C. Gray, Esq.
Schoeppl Law, P.A.
4651 North Federal Highway
Boca Raton, Florida 33431
Email: carl@schoeppllaw.com
tgray@schoeppllaw.com

***Via Email***:  *Jose Aman, pro se,* E-mail: joseaman123@gmail.com

14